Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

BETTY BASTIDAS, GREGG ROSS, LAUREN           )
CASPAR, and JEREL WALDEN,                     )
                                              )
                                              )
                    Plaintiffs,               )
                                              )
        -against-                             )
                                              )
THE CITY OF NEW YORK; MICHAEL                 )
BLOOMBERG, Mayor of the City of New York;     )
RAYMOND KELLY, New York City Police           )
Commissioner; STEPHEN HAMMERMAN,              )
Former Deputy Commissioner for Legal Matters, )
New York City Police Department; DAVID        )
COHEN, Deputy Commissioner for Intelligence,  )
New York City Police Department; THOMAS       )
DOEPFNER, Assistant Deputy Commissioner for   )
Legal Matters, New York City Police Department;)
NYPD LIEUTENANT DANIEL ALBANO; NYPD           )
DEPUTY INSPECTOR KERRY SWEET, NYPD            )
Legal Bureau Executive Officer; NYPD Legal    )
Bureau Senior Counsel RUBY MARIN-JORDAN       )
NYPD LEGAL BUREAU SUPERVISOR(S) AT            )
PIER 57; JOSEPH ESPOSITO, Chief of the New    )
York Police Department; THOMAS GRAHAM,        )
Commander, Disorder Control Unit, New York City)
Police Department; JACK MCMANUS, Assistant    )
Chief, New York City Police Department; BRUCE )
SMOLKA, former Commander, Patrol Borough      )
Manhattan South, New York City Police         )
Department; TERENCE MONAHAN, Assistant        )
Chief of the Bronx Borough Command; JOHN J.   )
COLGAN, Assistant Chief, New York City Police )
Department;POLICE INSPECTOR JAMES ESSIG;      )
POLICE DEPUTY CHIEF THOMAS GALATI;            )
POLICE DEPUTY INSPECTOR GERALD                )
DIECKMANN; POLICE CAPTAIN LORENZO             )
JOHNSON, POLICE LIEUTENANT PATRICK            )
CORTRIGHT; POLICE LIEUTENANT MARK             )
KEEGAN; POLICE OFFICER KEVIN SAM,             )

**SECOND AMENDED
COMPLAINT**

**ECF CASE**

**JURY TRIAL DEMANDED**

**05 Civ. 7670 (KMK)(JCF)**

---

**Deleted:** , LAURIE ¶ SCHOEMAN

**Deleted:** FIRST

**Deleted:** DEPUTY INSPECTOR

**Deleted:** COMMANDING OFFICER

**Deleted:**

---

1

Shield No. 9403; POLICE OFFICER JAMES )
RUFLE, Shield No. 26119; POLICE OFFICER )
DERRICK BAITY, Shield No. 13212; POLICE )
OFFICER SALVATOR DIMAGGIO, Shield No. )
31742; JOHN DOES; RICHARD ROES; HUDSON )
RIVER PARK TRUST, )
                                                              )
                                 Defendants. )
----------------------------------------------------------------X

**Deleted:** ; POLICE OFFICER¶
VICTOR PEREZ, Shield No. 17605

**Deleted:** ¶
BEATTY

## **PRELIMINARY STATEMENT**

1.     This is a civil rights action in which plaintiffs seek relief for the defendants'

violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the

United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments,

and by the laws and Constitution of the State of New York.  The plaintiffs seek damages, both

compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys'

fees, and such other and further relief as this court deems equitable and just.

## **JURISDICTION**

2.     This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and

1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiffs'

constitutional and civil rights.

3.     The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28

U.S.C. §1367, over any and all state law claims and as against all parties that are so related to

claims in this action within the original jurisdiction of this court that they form part of the same

case or controversy.

2

## JURY TRIAL DEMANDED

4.       Plaintiffs demand a trial by jury on each and every one of their claims as pleaded

herein.

## VENUE

5.       Venue is proper for the United States District Court for the Southern District of

New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.       Plaintiffs GREGG ROSS, LAUREN CASPAR, and JEREL WALDEN filed

timely Notices of Claim with the Comptroller of the City of New York within 90 days of the

incidents complained of herein.  More than 30 days have elapsed since the filing of these Notices

of Claim, and adjustment or payment thereof has been neglected or refused.

7.       Plaintiffs BETTY BASTIDAS' application to file a late Notice of Claim was

granted by New York State Supreme Court Justice Alice Schlesinger (New York County) on

August 17, 2005 (Index No. 05/110624).

**Deleted:** ' and LAURIE SCHOEMAN

**Deleted:** s

**Deleted:** s

**Deleted:** s

**Deleted:** were

## PARTIES

8.       Plaintiff BETTY BASTIDAS is a citizen of the United States, and at all times

relevant herein resided in the state of New York.

9.       Plaintiff GREGG ROSS is a citizen of the United States, and at all times relevant

herein resided in the state of New York.

10.       Plaintiff LAUREN CASPAR is a citizen of the United States, and at all times

relevant herein resided in the state of New York.

**Deleted:** 10.  Plaintiff LAURIE SCHOEMAN is a citizen of the United States, and at all times relevant herein resided in the state of New York.¶

11.       Plaintiff JEREL WALDEN is a citizen of the United States, and at all times

3

relevant herein resided in the state of New York.

12.    Defendant THE CITY OF NEW YORK ("The City") is and was at all times

relevant herein a municipal entity created and authorized under the laws of the State of New

York.  It is authorized by law to maintain a police department, which acts as its agent in the area

of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW

YORK assumes the risks incidental to the maintenance of a police force and the employment of

police officers as said risk attaches to the public consumers of the services provided by the New

York City Police Department ("NYPD").

13.    Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the Mayor

of the City of New York and the chief policy making official for the City and its departments, including

the New York City Police Department and is responsible, in whole and/or in part, for the creation,

implementation, promulgation and enforcement of the policies, practices and/or customs complained of

herein.  He is sued in both his individual and official capacities.

14.    Defendant RAYMOND KELLY is and was at all times relevant herein, the Police

Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation,

implementation, promulgation and enforcement of the policies, practices and /or customs complained of

herein.  He is sued individually and in his official capacity.

15.    STEPHEN HAMMERMAN, is and was at all times relevant herein, the Deputy

Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in

whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies,

practices and /or customs complained of herein.  He is sued individually and in his official capacity.

16.    DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for

4

Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

17.    THOMAS DOEPFNER, is and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

18.    NYPD LIEUTENANT DANIEL ALBANO, is and was at all times relevant herein a Lieutenant in the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

19.    NYPD DEPUTY INSPECTOR KERRY SWEET, is and was at all times relevant herein a Deputy Inspector in and the Executive Officer of the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

20.    RUBY MARIN-JORDAN is and was at all times relevant herein a Senior Counsel within the Legal Bureau for the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. She is sued individually and in his official capacity.

21.    NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 are and were at all times relevant herein members of the Legal Bureau for the New York City Police Department, and are

5

responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  They are sued individually and in his official capacity.

22.    Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

23.    Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

24.    Defendant JACK MCMANUS, is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party and for general oversight of the NYPD operations during the Republican National Convention (RNC) period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

25.    Defendant BRUCE SMOLKA is a retired Assistant Chief of the NYPD and the former Chief of Patrol Borough Manhattan South and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.   He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.  He

6

is sued individually and in his official capacity.

26.     Defendant TERENCE MONAHAN is an Assistant Chief in the NYPD and the Chief of the Bronx Borough Command who during the RNC period was responsible for the NYPD's Mobile Field Forces, which made the great majority of the unlawful arrests during the RNC period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity.

27.     Defendant JOHN J. COLGAN, is an Assistant Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

28.     Defendants ESSIG, GALATI, DIECKMANN, JOHNSON, CORTRIGHT, KEEGAN, SAM, RUFLE, BAITY, DIMAGGIO and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK.  Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

**Deleted:** PEREZ, BEATTY

7

Defendants ESSIG, GALATI, DIECKMANN, JOHNSON, CORTRIGHT, KEEGAN, SAM,

RUFLE, BAITY, DIMAGGIO and JOHN DOES, are sued individually and in their official

capacity.

      29.     Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER,

ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA,

MONAHAN, COLGAN, ESSIG, GALATI, DIECKMANN, JOHNSON, CORTRIGHT,

KEEGAN and RICHARD ROES are and were at all times relevant herein duly appointed and

acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK

and/or the New York City Police Department, responsible for the training, retention, supervision,

discipline and control of police officers under their command.  Said individual defendants are

and were at all times relevant herein acting under color of state law in the course and scope of

their duties and functions as supervisory officers, agents, servants, and employees of defendant

THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority

vested in them by THE CITY OF NEW YORK and the New York City Police Department, and

were otherwise performing and engaging in conduct incidental to the performance of their lawful

functions in the course of their duties.  Defendants BLOOMBERG, KELLY, HAMMERMAN,

COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM,

MCMANUS, SMOLKA, MONAHAN, COLGAN, ESSIG, GALATI, DIECKMANN,

JOHNSON, CORTRIGHT, KEEGAN and RICHARD ROES are sued individually and in their

official capacity.

      30.     Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at

all times relevant herein a public benefit corporation, organized and existing pursuant to the laws

8

**Deleted:** PEREZ, BEATTY

of the State of New York.  Defendant HUDSON RIVER PARK TRUST assumes the risks incidental to the maintenance and use of its structures and the employment of its employees as said risk attaches to the public consumers of the services provided by the HUDSON RIVER PARK TRUST and those who enter and remain within its structures.  Officials of HUDSON RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National Convention (RNC).  Said officials are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officials of defendant HUDSON RIVER PARK TRUST, were acting for, and on behalf of, and with the power and authority vested in them by HUDSON RIVER PARK TRUST and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

## STATEMENT OF FACTS

31.    Plaintiffs are individuals who were arrested on 16th Street between Union Square East and Irving Place on August 31, 2004.

32.    Plaintiffs were arrested during one of the many mass-arrests conducted by the NYPD during the period of the RNC, arrests made by the NYPD without probable cause or individualized suspicion of criminal activity.

33.    On the late afternoon of August 31, 2004 a group of people left the South side of Union Square Park and began walking North along Union Square East.  Some of these people were on the sidewalk, and some were in the street.  A number of musicians playing their instruments were walking at the front of the group.

9

34.    When the group arrived at the intersection with East 16th Street police officers had formed a line across Union Square East, preventing any further movement to the North.  Police officers directed the group to turn right onto East 16th Street, and the group did so.

35.    On information and belief, when the group reached Irving Place, at the other end of the block, another line of police officers prevented them from continuing forward and leaving the block in that direction.

36.    On information and belief, the intersection with Union Square East was thereafter also sealed by police officers, and many people who attempted to leave the block at the location where the group had entered it were unable to do so.  On information and belief, the vast majority of those who were on the block were not permitted to leave the block at all.

37.    Police officers acted aggressively and violently towards the musicians and others present on the block.

38.    The people on the block were told to move to the sidewalks and told to sit down.

39.    After the people on the block were seated for a long period of time, the police officers handcuffed them.

40.    Police officers thereafter placed them into vehicles for transport to Pier 57.

41.    At no time were the individuals on 16th Street given an order to disperse or advised that they were in violation of any law or ordinance of the State or City of New York.

42.    Plaintiff BETTY BASTIDAS is a professional photojournalist.  On August 31, 2004 she went from Union Square Park to East 16th Street in order to observe what was occurring there and to photograph it.  She was wearing a press pass around her neck.

43.    While photographing the events occurring on the block she, like the other people

10

present on the block, was directed by a police officer to get on the ground.

44.     After a long period of time BETTY BASTIDAS was handcuffed.  On information and belief the police officer who handcuffed her was defendant KEVIN SAM.

45.     BETTY BASTIDAS was thereafter transported in handcuffs to Pier 57.

45.     On the evening of August 31, 2004 plaintiff GREGG ROSS left his job at the library of New School University and went to Union Square Park.

46.     While at Union Square Park he saw the group proceed North on Union Square East.  He wanted to observe what was occurring and walked along with the group on the sidewalk, and onto 16th Street.

47.     GREGG ROSS saw the police officers acting aggressively and violently towards the people present on the block, and heard one of the police officers state, in sum and substance, "you don't fuck with the NYPD - we'll fuck with you."

48.     Like so many others on 16th Street, GREGG ROSS was also arrested and transported in handcuffs in Pier 57.

49.     On August 31, 2004 plaintiff LAUREN CASPAR was arrested on East 16th Street while she was on her way to her Aunt's house.

50.     LAUREN CASPAR attempted to exit East 16th Street at both Irving Place and Union Square East, but the police officers present would not let her leave from either end of the block.

51.     LAUREN CASPAR saw the police officers acting aggressively and violently towards the people present on the block

52.     LAUREN CASPAR was told to sit down by the police officers present on East

11

Deleted: ¶
  35.  Plaintiff LAURIE SCHOEMAN was in Union Square Park on the afternoon of August 31, 2004 to peacefully and lawfully exercise her rights to free speech and assembly and to enjoy her day.  When she saw the group proceeding North on Union Square East she went into the Zen Palate restaurant on the corner of Union Square East and East 16th Street and ordered a cup of tea to go.  She exited Zen Palate with her tea and observed the activity on East 16th Street.¶
  36.  Like so many others on 16th Street, she was also arrested and transported in handcuffs to Pier 57.¶
  37.  On information and belief the police officer who handcuffed LAURIE SCHOEMAN was defendant PEREZ.  In response to LAURIE SCHOEMAN's queries as to why she was being arrested, Defendant PEREZ told her, in sum and substance, that he wished that he knew, and that he was only doing what he was told.

16th Street.

53.     After sitting for a long period of time, LAUREN CASPAR was handcuffed by her

arresting officer, on information and belief defendant BAITY.

54.     LAUREN CASPAR was brought to Pier 57.

55.     While LAUREN CASPAR was detained at Pier 57, some of the detainees began

to chant that they needed medical attention. Police officers present at Pier 57 began dancing to

these chants.

56.     Plaintiff JEREL WALDEN was also wrongfully arrested on East 16th Street

without probable cause or individualized suspicion that he had committed any crime.

57.     Plaintiff JEREL WALDEN also witnessed the police officers acting aggressively

and violently towards the people present on the block. Like so many others on 16th Street,

JEREL WALDEN was also handcuffed and transported in handcuffs to Pier 57.

58.     The arrest decision was made by Defendants ESSIG and DIECKMANN, without

justification or probable cause, and without individualized knowledge that any of the arrestees

had engaged in any illegal conduct. This decision to engage in the mass arrests on 16th Street

was communicated to lower-ranking NYPD officers, who effected those orders.

59.     Defendants GALATI, JOHNSON, CORTRIGHT, and KEEGAN were among the

NYPD Commanding Officers who also exercised command responsibility at East 16th Street, and

participated both directly and in their capacity as supervisors in making the wrongful mass

arrests.

60.     On information and belief, all those arrested on East 16th Street, and the vast

majority of the almost two thousand people arrested during the course of the period of the RNC,

12

were confined for some period of time at Pier 57.

61.    Pier 57 is a former bus depot located on the Hudson River, and was reconfigured

for use as a detention facility during the period of the RNC by defendant CITY OF NEW YORK.

62.    Pier 57 is owned by and/or under the control of defendant HRPT.

> **Deleted:** by

63.    Prior to the RNC the CITY OF NEW YORK contracted with HRPT for the use of

Pier 57 as a detention facility.

64.    The conditions at Pier 57 were atrocious.  The detainees were kept in chain-link

cages topped with barbed wire that lacked adequate seating.  The floor of Pier 57 was caked with

a dark grimy substance that spread to the clothing and bodies of those detained therein.  There

were numerous signs warning of hazardous materials that were posted at multiple locations

throughout the pier.  On information and belief, the detainees were exposed during their time at

Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should

have known, were present there.  During these periods of confinement the detainees were

unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

65.    Plaintiffs were processed at Pier 57, and their arresting officers were instructed by

employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN,

DOEPFNER, SWEET, ALBANO MARIN-JORDAN, and NYPD LEGAL BUREAU

SUPERVISOR(S) AT PIER 57 to create false accounts of plaintiffs' arrests.  On information and

belief, these Legal Bureau personnel also participated in the making of unconstitutional and

illegal arrests at numerous mass arrest locations during the RNC.

66.    Defendant HAMMERMAN was appointed by Defendant Kelly as Deputy

Commissioner of Legal Matters without having knowledge at all of the rights of demonstrators

13

or of individuals' rights under the First Amendment more generally, and no knowledge of the elements of the charges that are most commonly lodged against arrestees in demonstration-related circumstances.  In addition to delegating his authority to Defendant DOEPFNER during the RNC period, which resulted in the construction of the NYPD Legal Bureau's unconstitutional and illegal policies, practices, customs, and usages during the RNC period, Defendant HAMMERMAN also personally set a tone of lawlessness and contempt for individual rights within the NYPD during the RNC, including by personally attempting to frame an individual named Dennis Kyne for crimes which he did not commit.

67.    The detainees at Pier 57, including plaintiffs, were further subjected to unreasonable delay in being processed and moved through the system.  The City insisted on fingerprinting all RNC detainees in contravention of New York State Law, the vast number of whom were arrested and charged based only on the alleged commission of violations that did not rise to the level of crimes under New York State law, and who therefore under New York State law did not have to be fingerprinted to be processed and released with a date to return for court. Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 not equipped with any fingerprinting machines.  On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints and other personal information were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and interests of the arrestees and creating the potential for unlawful surveillance activity by law enforcement authorities, for the unlawful chilling of their exercise of free speech and association, and for disruptions to their lives.  Additionally, unnecessary and dilatory additional processing steps were taken at Pier 57 that delayed the detainees' movement through the system, including

14

**Deleted: a**

overly exacting property itemization procedures and the screening of each arrestee's paperwork by the NYPD's Legal Division to determine and finalize what suggested charges should be forwarded to the District Attorney's office for each arrestee, and to create the arrest narratives on the arresting officers' paperwork.  Further unreasonable and unnecessary delays were also suffered by RNC detainees upon their subsequent transfer to and detention at the Central Booking Facility at 100 Centre Street.  All arrestees during the RNC were thereby held in custody of the CITY OF NEW YORK for periods of time longer than were reasonable or necessary.

68.     After their detention at Pier 57, further callous and unreasonable treatment and conditions of confinement were endured by plaintiffs during their transfer to and confinement at the Central Booking Facility at 100 Centre Street.

69.     On information and belief, during the periods of their confinement the vast majority of RNC arrestees were subjected to unreasonably tight and painful wrist restraints/handcuffs.

70.     During their time in custody plaintiffs were subjected to unreasonably tight and painful wrist restraints/handcuffs.

71.     Plaintiff BETTY BASTIDAS was issued a Desk Appearance Ticket that was signed by her arresting officer KEVIN SAM, and that instructed her to appear in Criminal Court on October 5, 2004 to answer the charge of disorderly conduct.  When she arrived at the Criminal Court on that date she received a letter from the Office of the District Attorney informing her that on September 2, 2004, which had been the date of her release from police custody, their office had declined to prosecute her.  Plaintiff BETTY BASTIDAS was released

15

after approximately 40 hours in custody.

72.     Plaintiff GREGG ROSS was told that he was going to be taken to see a Judge. Instead he was simply brought to a door and released, and informed that there would not be any charges issued against him.  He later received a summons in the mail, directing him to report to the Criminal Court on a date that had already passed.  When GREGG ROSS telephoned to inquire about this he was informed that a bench warrant had been issued for his arrest because he had not come to Court.  Defendant RUFLE was the deponent on the complaint filed with the Criminal Court against GREGG ROSS, charging him disorderly conduct and parading without a permit.  All charges against GREGG ROSS have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.  GREGG ROSS was released after approximately 50 hours in custody.

73.     Plaintiff LAUREN CASPAR was released after approximately 35 hours in custody.  On information and belief, she was charged with disorderly conduct and parading without a permit.  All charges against LAUREN CASPAR have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

74.     Plaintiff JEREL WALDEN was released after approximately 44 hours in custody.  Defendant DIMAGGIO was the deponent on the complaint filed against him in Criminal Court charging him with disorderly conduct and parading without a permit.  All charges against JEREL WALDEN have been dismissed in their entirety.

75.     Prior to, during, and after the RNC officials of the CITY OF NEW YORK evinced through their statements and actions an attitude of contempt toward those who demonstrated during the RNC, and toward those thought to be assisting or otherwise related to

16

**Deleted:**  60.  Plaintiff LAURIE SCHOEMAN was released after approximately 40 hours in custody.  On information and belief, she was charged with disorderly conduct and parading without a permit.  All charges against LAURIE SCHOEMAN have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.¶

them, including legal observers, anarchists, certain segments of the press, and the National

Lawyers Guild.  Officials of the CITY OF NEW YORK attempted to create a climate of fear

relative to the activities of demonstrators.

76.    Defendant COHEN prior to the RNC caused the NYPD to be engaged in

widespread surveillance of individuals and groups expected to be demonstrating during the RNC

period, and fostered and created a climate of hostility toward demonstrators, improperly

conflating them with civil disobedience and/or violence and/or violent anarchism and/or

terrorism.  The intelligence obtained through Defendant COHEN's RNC intelligence program

formed the backdrop and basis for the unconstitutional and illegal treatment of RNC arrestees,

including the decision to engage in wrongful mass arrests, to fingerprint all arrestees, to not issue

summonses to any RNC arrestees, and to hold RNC arrestees in NYPD custody for an

improperly long period of time.

77.    This tone of hostility to demonstrators, and the resultant policies, customs, practices and

usages to punish and discourage dissent were further set by statements made by other high level City

Officials, including the Mayor and Police Commissioner, in the period leading up to and during the

RNC.  These statements portrayed those who chose to engage in political protest in the most negative

light.  This criminalization and/or demonization of people engaged in political protest was clearly

communicated to NYPD police officers and supervisors through the public statements by NYPD

officials, including Police Commissioner Kelly, who made remarks about the threat posed to New York

City by "hard-core" and "dangerous" protestors.  This sentiment was reiterated, summarized and ratified

in the public statements of defendant BLOOMBERG in which he identified the plaintiffs and those

similarly situated as "terrorists" and "guilty" criminals.

17

78.   Defendants BLOOMBERG and KELLY further displayed their animosity to demonstrators, and their contempt for the rights of demonstrators, during the RNC period by discriminatorily and under false pretenses denying the issuance of a permit for use of Central Park's Great Lawn by demonstrators for a rally at the end of the largest planned demonstration of the RNC period on August 29, 2004.

79.   The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating. Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57. These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

80.   The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, and applied the parading ordinance and other laws, including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

81.   The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association. The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees in part to prevent the arrestees from exercising their rights to free speech and expression.

## FIRST CLAIM

18

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

82.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

83.    By their conduct and actions in harassing, falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiffs, by subjecting plaintiffs to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, by deliberate indifference to medical needs, and by violating the arrestees' Fourteenth Amendment rights to equal protection and substantive and procedural due process, defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, ESSIG, GALATI, DIECKMANN, JOHNSON, CORTRIGHT, KEEGAN, SAM, RUFLE, BAITY, DIMAGGIO and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

84.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

19

## SECOND CLAIM

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE

## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

85.     The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

86.     By failing to remedy the wrongs committed by their subordinates, and in failing

to properly train, screen, supervise, or discipline their subordinates, supervisory officers

BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET,

MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO,

GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, ESSIG, GALATI,

DIECKMANN, JOHNSON, CORTRIGHT, KEEGAN, and RICHARD ROES caused damage

and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. §1983, and the United

States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

87.     As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

## THIRD CLAIM

### LIABILITY OF THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

88.     The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

89.     At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants had policies,

practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

90.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

91.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of punishing and suppressing peaceful expression and association. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of using the mechanisms and conditions of arrest and pre-arraignment detention for punitive and deterrent purposes.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of maliciously prosecuting those arrested in connection with the RNC.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of preventive detention.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

21

92.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of keeping the traffic flow moving smoothly for the benefit of the Republican Party at all costs, including the use of mass arrests and preventive detention, and of ensuring that the Republican Delegates to the Republican National Convention were able to move among and between their hotels, Madison Square Garden, and other RNC venues without any risk of impediment.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

93.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false arrests at the slightest subjective perception of uncooperativeness by civilians or that the police were not in, or may soon not be in, full control of a situation, whether or not their perceived lack of control or a perceived lack of cooperativeness in fact did not indicate the violation of any law.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

94.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of not issuing summonses to RNC arrestees, and of not issuing Desk Appearance Tickets to RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

22

95.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of fingerprinting of all RNC arrestees and of not ensuring that those fingerprints and other personal information were either destroyed or returned upon dismissal of charges against RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

96.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at criminal trials.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

97.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of inflicting pain and suffering upon persons, including, keeping arrestees in handcuffs / flexcuffs for extended periods of time, applying extremely tight handcuffs / flexcuffs, denying adequate facilities to sit or sleep, exposure to irritants, exposure to extremes of heat and cold, shuttling arrestees unnecessarily among and between numerous holding cages and cells, and other means of inflicting pain and discomfort.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

23

98.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in degrading verbal abuse utterly intolerable in a civilized society towards RNC arrestees, often while physical compulsion and/or force was being applied to RNC arrestees via tight handcuffs / flexcuffs or otherwise.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

99.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of promoting those members of the NYPD who participated in the NYPD's unconstitutional and illegal policies during the RNC.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

100.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and unequally applying the parading ordinance and other laws, including the statute prohibiting disorderly conduct.  Examples of these unconstitutional, discriminatory and unequal policies, practices, customs, and usages are: (a) the enforcement of the unconstitutional parading statute, New York City Administrative Code section 10.110, Parading Without a Permit; (b) the application of the Parading Without a

24

Permit statute to people walking on the sidewalk; (c) enforcement of the unconstitutional Disorderly Conduct statute, Penal Law section 240.20(5) (obstructing pedestrian traffic); (d) the application of the Disorderly Conduct statute, subsection 5, to people walking on the sidewalk; (e) enforcement of the Disorderly Conduct statute, Penal Law section 240.20(6) (failure to obey a lawful order to disperse) without cause to believe that an arrestee was congregated with others and/or without having issued any dispersal orders and/or failing to ensure that the dispersal orders were heard and/or or without giving a sufficient opportunity for people to disperse. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

101.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTH CLAIM

### LIABILITY OF HUDSON RIVER PARK TRUST
### FOR CONSTITUTIONAL VIOLATIONS

102.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

103.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

104.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST, had de facto policies, practices, customs, and usages of deliberate indifference to the health and well being of those who they knew or should have known would be held in Pier 57.

25

105.    By their conduct and actions in contracting with the CITY OF NEW YORK and

otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of

the RNC, and thereby subjecting plaintiffs to hazardous conditions of confinement, officials of

the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification,

and with a deliberate indifference to or a reckless disregard for the natural and probable

consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional

rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its

First, Fourth, Fifth, and Fourteenth amendment.

106.    These acts, policies, practices, customs, and usages were a direct and proximate

cause of the unconstitutional conduct alleged herein.

107.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

## FIFTH CLAIM

**RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON
RIVER PARK TRUST FOR STATE LAW VIOLATIONS**

108.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

109.    The conduct of defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN,

DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU

SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA,

MONAHAN, COLGAN, ESSIG, GALATI, DIECKMANN, JOHNSON, CORTRIGHT,

KEEGAN, SAM, RUFLE, BAITY, DIMAGGIO, DOES, and ROES alleged herein, occurred

| Deleted: PEREZ, |
|---|
| Deleted: EATTY |

26

while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers, and/or while they were acting as agents and employees of defendant THE CITY OF NEW YORK, and, as a result, defendant THE CITY OF NEW YORK is liable to the plaintiffs pursuant to the state common law doctrine of respondeat superior.

110.    The conduct of employees and officials of the HUDSON RIVER PARK TRUST, alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK concerning the improper and dangerous use of Pier 57, occurred in and during the course and scope of their duties and functions as employees and officials of the HUDSON RIVER PARK TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

111.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

### ASSAULT AND BATTERY

112.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

113.    By the actions described above, defendants did inflict assault and battery upon plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

27

114.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

### SEVENTH CLAIM

**FALSE ARREST and FALSE IMPRISONMENT**

115.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

116.     By the actions described above, defendants caused to be falsely arrested or falsely arrested plaintiffs, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

117.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

### EIGHTH CLAIM

**INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

118.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

119.     By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiffs. The acts and conduct of the defendants were the direct and proximate cause of injury and

28

damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

120.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

## ABUSE OF PROCESS

121.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

122.    By the conduct and actions described above, defendants employed regularly issued process against plaintiffs compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm plaintiffs without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiffs which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

123.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TENTH CLAIM

## VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO

29

**FREE SPEECH AND ASSEMBLY**

124.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

125.    By the actions described above, defendants violated the free speech and assembly rights of plaintiffs and retaliated against plaintiffs for the exercise of their rights to free speech and assembly.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

126.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

**ELEVENTH CLAIM**

**VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW**

127.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

128.    By the actions described above, defendants violated the right of plaintiffs to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

129.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TWELFTH CLAIM

### NEGLIGENCE

130.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

131.    The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

132.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRTEENTH CLAIM

### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

133.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

134.    Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST negligently hired, screened, retained, supervised and trained the employees and officials who injured plaintiffs.  The acts and conduct of these employees and officials were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

135.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

31

costs and expenses, and were otherwise damaged and injured.

## FOURTEENTH CLAIM

### FUTURE MEDICAL EXPENSES

136.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

137.    During their detention at Pier 57, plaintiffs were exposed to hazardous materials. As a result of this exposure, plaintiffs reasonably anticipate consequential damages in the form of future expenses for medical monitoring and testing.

138.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTEENTH CLAIM

### PRIMA FACIE TORT

140.    The plaintiffs incorporate by reference the allegations set forth in the paragraphs above, as if fully set forth herein.

141.    Defendants, without excuse or justification, and intending to inflict harm upon plaintiffs by an act or series of acts that would otherwise be lawful, did inflict harm upon plaintiffs, to wit, the confinement and processing of plaintiffs through the stages of pre-arraignment detention in a hazardous and dilatory fashion.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

142.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTEENTH CLAIM

### MALICIOUS PROSECUTION

143.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

144.    By the actions described above, defendants maliciously prosecuted plaintiffs BETTY BASTIDAS and JEREL WALDEN without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs BETTY BASTIDAS and JEREL WALDEN and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

145.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

### SEVENTEENTH CLAIM

### VIOLATION OF NEW YORK STATE CRIMINAL PROCEDURE LAW

### §§ 160.10 AND 160.50

146.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

147.    By the actions described above, defendants violated plaintiffs' rights under New York State Criminal Procedure Law §§ 160.10 and 160.50 by fingerprinting them without any

right or authority to do so, and failing to request or ensure that the fingerprints and other personal information were destroyed or returned upon dismissal of the criminal charges against plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

148.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, the plaintiffs demand the following relief jointly and severally against all of the defendants:

a.  Compensatory damages;

b.  Punitive damages;

c.  The convening and empanelling of a jury to consider the merits of the claims herein;

d.  Costs and interest and attorney's fees;

e.  Such other and further relief as this court may deem appropriate and equitable.

Dated:      New York, New York
             August ___, 2007

_____

JEFFREY A. ROTHMAN, ESQ.
(JR-0398)
315 Broadway, Suite 200
New York, NY 10007
(212) 227-2980

JOHN WARE UPTON, ESQ.
(JU-9065)
70 Lafayette Street
New York, NY 10013
(212) 233-9300

Attorneys for plaintiffs

**Deleted:** JEFFREY E. FOGEL, ESQ.¶
(JF-3948)¶
232 Warren Street¶
Brooklyn, NY 11201¶
(718) 243-2039¶

35

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
BETTY BASTIDAS, GREGG ROSS, LAUREN       )
CASPAR, and JEREL WALDEN,                )
                                         )    **SECOND AMENDED**
                                         )    **COMPLAINT**
                                         )
                    Plaintiffs,          )
                                         )
        -against-                        )    **ECF CASE**
                                         )
THE CITY OF NEW YORK; MICHAEL            )
BLOOMBERG, Mayor of the City of New York; )   **JURY TRIAL DEMANDED**
RAYMOND KELLY, New York City Police      )
Commissioner; STEPHEN HAMMERMAN,         )    **05 Civ. 7670 (KMK)(JCF)**
Former Deputy Commissioner for Legal Matters, )
New York City Police Department; DAVID   )
COHEN, Deputy Commissioner for Intelligence, )
New York City Police Department; THOMAS  )
DOEPFNER, Assistant Deputy Commissioner for )
Legal Matters, New York City Police Department; )
NYPD LIEUTENANT DANIEL ALBANO; NYPD      )
DEPUTY INSPECTOR KERRY SWEET, NYPD       )
Legal Bureau Executive Officer; NYPD Legal )
Bureau Senior Counsel RUBY MARIN-JORDAN  )
NYPD LEGAL BUREAU SUPERVISOR(S) AT       )
PIER 57; JOSEPH  ESPOSITO, Chief of the New )
York Police Department; THOMAS GRAHAM,   )
Commander, Disorder Control Unit, New York City )
Police Department; JACK MCMANUS, Assistant )
Chief, New York City Police Department; BRUCE )
SMOLKA, former Commander, Patrol Borough )
Manhattan South, New York City Police    )
Department; TERENCE MONAHAN, Assistant   )
Chief of the Bronx Borough Command; JOHN J. )
COLGAN, Assistant Chief, New York City Police )
Department;POLICE INSPECTOR JAMES ESSIG; )
POLICE DEPUTY CHIEF THOMAS GALATI;       )
POLICE DEPUTY INSPECTOR GERALD           )
DIECKMANN; POLICE CAPTAIN LORENZO        )
JOHNSON**,** POLICE LIEUTENANT PATRICK       )
CORTRIGHT; POLICE LIEUTENANT MARK        )
KEEGAN; POLICE OFFICER KEVIN SAM,        )
Shield No. 9403; POLICE OFFICER JAMES    )

1

RUFLE, Shield No. 26119; POLICE OFFICER    )
DERRICK BAITY, Shield No. 13212; POLICE    )
OFFICER SALVATOR DIMAGGIO, Shield No.    )
31742; JOHN DOES; RICHARD ROES; HUDSON)
RIVER PARK TRUST,    )
    )
                    Defendants.    )
------------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiffs seek relief for the defendants'

violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the

United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments,

and by the laws and Constitution of the State of New York.  The plaintiffs seek damages, both

compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys'

fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.    This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and

1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiffs'

constitutional and civil rights.

3.    The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28

U.S.C. §1367, over any and all state law claims and as against all parties that are so related to

claims in this action within the original jurisdiction of this court that they form part of the same

case or controversy.

## JURY TRIAL DEMANDED

2

4.      Plaintiffs demand a trial by jury on each and every one of their claims as pleaded herein.

## VENUE

5.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.      Plaintiffs GREGG ROSS, LAUREN CASPAR, and JEREL WALDEN filed timely Notices of Claim with the Comptroller of the City of New York within 90 days of the incidents complained of herein.  More than 30 days have elapsed since the filing of these Notices of Claim, and adjustment or payment thereof has been neglected or refused.

7.      Plaintiffs BETTY BASTIDAS' application to file a late Notice of Claim was granted by New York State Supreme Court Justice Alice Schlesinger (New York County) on August 17, 2005 (Index No. 05/110624).

## PARTIES

8.      Plaintiff BETTY BASTIDAS is a citizen of the United States, and at all times relevant herein resided in the state of New York.

9.      Plaintiff GREGG ROSS is a citizen of the United States, and at all times relevant herein resided in the state of New York.

10.     Plaintiff LAUREN CASPAR is a citizen of the United States, and at all times relevant herein resided in the state of New York.

11.     Plaintiff JEREL WALDEN is a citizen of the United States, and at all times relevant herein resided in the state of New York.

12.     Defendant THE CITY OF NEW YORK ("The City") is and was at all times

relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department ("NYPD").

13.     Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacities.

14.     Defendant RAYMOND KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

15.     STEPHEN HAMMERMAN, is and was at all times relevant herein, the Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

16.     DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

4

17.     THOMAS DOEPFNER, is and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

18.     NYPD LIEUTENANT DANIEL ALBANO, is and was at all times relevant herein a Lieutenant in the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

19.     NYPD DEPUTY INSPECTOR KERRY SWEET,  is and was at all times relevant herein a Deputy Inspector in and the Executive Officer of  the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

20.     RUBY MARIN-JORDAN is and was at all times relevant herein a Senior Counsel within the Legal Bureau for the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  She is sued individually and in his official capacity.

21.     NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 are and were at all times relevant herein members of the Legal Bureau for the New York City Police Department, and are responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  They are sued individually and in his official capacity.

22.     Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the

NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

23.    Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

24.    Defendant JACK MCMANUS, is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party and for general oversight of the NYPD operations during the Republican National Convention (RNC) period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

25.    Defendant BRUCE SMOLKA is a retired Assistant Chief of the NYPD and the former Chief of Patrol Borough Manhattan South and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.    He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.  He is sued individually and in his official capacity.

26.    Defendant TERENCE MONAHAN is an Assistant Chief in the NYPD and the Chief of the Bronx Borough Command who during the RNC period was responsible for the NYPD's Mobile Field Forces, which made the great majority of the unlawful arrests during the RNC period,

and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity.

27. Defendant JOHN J. COLGAN, is an Assistant Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

28. Defendants ESSIG, GALATI, DIECKMANN, JOHNSON, CORTRIGHT, KEEGAN, SAM, RUFLE, BAITY, DIMAGGIO and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK. Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants ESSIG, GALATI, DIECKMANN, JOHNSON, CORTRIGHT, KEEGAN, SAM, RUFLE, BAITY, DIMAGGIO and JOHN DOES, are sued individually and in their official capacity.

29. Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA,

MONAHAN, COLGAN, ESSIG**,** GALATI, DIECKMANN, JOHNSON, CORTRIGHT,

KEEGAN and RICHARD ROES are and were at all times relevant herein duly appointed and

acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK

and/or the New York City Police Department, responsible for the training, retention, supervision,

discipline and control of police officers under their command.  Said individual defendants are

and were at all times relevant herein acting under color of state law in the course and scope of

their duties and functions as supervisory officers, agents, servants, and employees of defendant

THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority

vested in them by THE CITY OF NEW YORK and the New York City Police Department, and

were otherwise performing and engaging in conduct incidental to the performance of their lawful

functions in the course of their duties.  Defendants BLOOMBERG, KELLY, HAMMERMAN,

COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM,

MCMANUS, SMOLKA, MONAHAN, COLGAN, ESSIG**,** GALATI, DIECKMANN,

JOHNSON, CORTRIGHT, KEEGAN and RICHARD ROES are sued individually and in their

official capacity.

30.     Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at

all times relevant herein a public benefit corporation, organized and existing pursuant to the laws

of the State of New York.  Defendant HUDSON RIVER PARK TRUST assumes the risks

incidental to the maintenance and use of its structures and the employment of its employees as

said risk attaches to the public consumers of the services provided by the HUDSON RIVER

PARK TRUST and those who enter and remain within its structures.  Officials of HUDSON

RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted

THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National

8

Convention (RNC). Said officials are and were at all times relevant herein acting under color of

state law in the course and scope of their duties and functions as officials of defendant HUDSON

RIVER PARK TRUST, were acting for, and on behalf of, and with the power and authority

vested in them by HUDSON RIVER PARK TRUST and were otherwise performing and

engaging in conduct incidental to the performance of their lawful functions in the course of their

duties.

## STATEMENT OF FACTS

31.     Plaintiffs are individuals who were arrested on 16th Street between Union Square

East and Irving Place on August 31, 2004.

32.     Plaintiffs were arrested during one of the many mass-arrests conducted by the

NYPD during the period of the RNC, arrests made by the NYPD without probable cause or

individualized suspicion of criminal activity.

33.     On the late afternoon of August 31, 2004 a group of people left the South side of

Union Square Park and began walking North along Union Square East. Some of these people

were on the sidewalk, and some were in the street. A number of musicians playing their

instruments were walking at the front of the group.

34.     When the group arrived at the intersection with East 16th Street police officers had

formed a line across Union Square East, preventing any further movement to the North. Police

officers directed the group to turn right onto East 16th Street, and the group did so.

35.     On information and belief, when the group reached Irving Place, at the other end

of the block, another line of police officers prevented them from continuing forward and leaving

the block in that direction.

36.     On information and belief, the intersection with Union Square East was thereafter

9

also sealed by police officers, and many people who attempted to leave the block at the location where the group had entered it were unable to do so. On information and belief, the vast majority of those who were on the block were not permitted to leave the block at all.

37.    Police officers acted aggressively and violently towards the musicians and others present on the block.

38.    The people on the block were told to move to the sidewalks and told to sit down.

39.    After the people on the block were seated for a long period of time, the police officers handcuffed them.

40.    Police officers thereafter placed them into vehicles for transport to Pier 57.

41.    At no time were the individuals on 16th Street given an order to disperse or advised that they were in violation of any law or ordinance of the State or City of New York.

42.    Plaintiff BETTY BASTIDAS is a professional photojournalist. On August 31, 2004 she went from Union Square Park to East 16th Street in order to observe what was occurring there and to photograph it. She was wearing a press pass around her neck.

43.    While photographing the events occurring on the block she, like the other people present on the block, was directed by a police officer to get on the ground.

44.    After a long period of time BETTY BASTIDAS was handcuffed. On information and belief the police officer who handcuffed her was defendant KEVIN SAM.

45.    BETTY BASTIDAS was thereafter transported in handcuffs to Pier 57.

45.    On the evening of August 31, 2004 plaintiff GREGG ROSS left his job at the library of New School University and went to Union Square Park.

46.    While at Union Square Park he saw the group proceed North on Union Square East. He wanted to observe what was occurring and walked along with the group on the

10

sidewalk, and onto 16th Street.

47.    GREGG ROSS saw the police officers acting aggressively and violently towards the people present on the block, and heard one of the police officers state, in sum and substance, "you don't fuck with the NYPD - we'll fuck with you."

48.    Like so many others on 16th Street, GREGG ROSS was also arrested and transported in handcuffs to Pier 57.

49.    On August 31, 2004 plaintiff LAUREN CASPAR was arrested on East 16th Street while she was on her way to her Aunt's house.

50.    LAUREN CASPAR attempted to exit East 16th Street at both Irving Place and Union Square East, but the police officers present would not let her leave from either end of the block.

51.    LAUREN CASPAR saw the police officers acting aggressively and violently towards the people present on the block

52.    LAUREN CASPAR was told to sit down by the police officers present on East 16th Street.

53.    After sitting for a long period of time, LAUREN CASPAR was handcuffed by her arresting officer, on information and belief defendant BAITY.

54.    LAUREN CASPAR was brought to Pier 57.

55.    While LAUREN CASPAR was detained at Pier 57, some of the detainees began to chant that they needed medical attention.  Police officers present at Pier 57 began dancing to these chants.

56.    Plaintiff JEREL WALDEN was also wrongfully arrested on East 16th Street without probable cause or individualized suspicion that he had committed any crime.

11

57.    Plaintiff JEREL WALDEN also witnessed the police officers acting aggressively and violently towards the people present on the block. Like so many others on 16th Street, JEREL WALDEN was also handcuffed and transported in handcuffs to Pier 57.

58.    The arrest decision was made by Defendants ESSIG and DIECKMANN, without justification or probable cause, and without individualized knowledge that any of the arrestees had engaged in any illegal conduct. This decision to engage in the mass arrests on 16th Street was communicated to lower-ranking NYPD officers, who effected those orders..

59.    Defendants GALATI, JOHNSON, CORTRIGHT, and KEEGAN were among the NYPD Commanding Officers who also exercised command responsibility at East 16th Street, and participated both directly and in their capacity as supervisors in making the wrongful mass arrests.

60.    On information and belief, all those arrested on East 16th Street, and the vast majority of the almost two thousand people arrested during the course of the period of the RNC, were confined for some period of time at Pier 57.

61.    Pier 57 is a former bus depot located on the Hudson River, and was reconfigured for use as a detention facility during the period of the RNC by defendant CITY OF NEW YORK.

62.    Pier 57 is owned by and/or under the control of defendant HRPT.

63.    Prior to the RNC the CITY OF NEW YORK contracted with HRPT for the use of Pier 57 as a detention facility.

64.    The conditions at Pier 57 were atrocious. The detainees were kept in chain-link cages topped with barbed wire that lacked adequate seating. The floor of Pier 57 was caked with a dark grimy substance that spread to the clothing and bodies of those detained therein. There were numerous signs warning of hazardous materials that were posted at multiple locations

12

throughout the pier.  On information and belief, the detainees were exposed during their time at

Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should

have known, were present there.  During these periods of confinement the detainees were

unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

65.     Plaintiffs were processed at Pier 57, and their arresting officers were instructed by

employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN,

DOEPFNER, SWEET, ALBANO MARIN-JORDAN, and NYPD LEGAL BUREAU

SUPERVISOR(S) AT PIER 57 to create false accounts of plaintiffs' arrests**.**  On information and

belief, these Legal Bureau personnel also participated in the making of unconstitutional and

illegal arrests at numerous mass arrest locations during the RNC.

66.     Defendant HAMMERMAN was appointed by Defendant Kelly as Deputy

Commissioner of Legal Matters without having knowledge at all of the rights of demonstrators

or of individuals' rights under the First Amendment more generally, and no knowledge of the

elements of the charges that are most commonly lodged against arrestees in demonstration-

related circumstances.  In addition to delegating his authority to Defendant DOEPFNER during

the RNC period, which resulted in the construction of the NYPD Legal Bureau's unconstitutional

and illegal policies, practices, customs, and usages during the RNC period, Defendant

HAMMERMAN also personally set a tone of lawlessness and contempt for individual rights

within the NYPD during the RNC, including by personally attempting to frame an individual

named Dennis Kyne for crimes which he did not commit.

67.     The detainees at Pier 57, including plaintiffs, were further subjected to

unreasonable delay in being processed and moved through the system.  The City insisted on

fingerprinting all RNC detainees in contravention of New York State Law, the vast number of

whom were arrested and charged based only on the alleged commission of violations that did not rise to the level of crimes under New York State law, and who therefore under New York State law did not have to be fingerprinted to be processed and released with a date to return for court. Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 not equipped with any fingerprinting machines. On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints and other personal information were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and interests of the arrestees and creating the potential for unlawful surveillance activity by law enforcement authorities, for the unlawful chilling of their exercise of free speech and association, and for disruptions to their lives. Additionally, unnecessary and dilatory additional processing steps were taken at Pier 57 that delayed the detainees' movement through the system, including overly exacting property itemization procedures and the screening of each arrestee's paperwork by the NYPD's Legal Division to determine and finalize what suggested charges should be forwarded to the District Attorney's office for each arrestee, and to create the arrest narratives on the arresting officers' paperwork. Further unreasonable and unnecessary delays were also suffered by RNC detainees upon their subsequent transfer to and detention at the Central Booking Facility at 100 Centre Street. All arrestees during the RNC were thereby held in custody of the CITY OF NEW YORK for periods of time longer than were reasonable or necessary.

68.    After their detention at Pier 57, further callous and unreasonable treatment and conditions of confinement were endured by plaintiffs during their transfer to and confinement at the Central Booking Facility at 100 Centre Street.

69.    On information and belief, during the periods of their confinement the vast

14

majority of RNC arrestees were subjected to unreasonably tight and painful wrist restraints/handcuffs.

70.     During their time in custody plaintiffs were subjected to unreasonably tight and painful wrist restraints/handcuffs.

71.     Plaintiff BETTY BASTIDAS was issued a Desk Appearance Ticket that was signed by her arresting officer KEVIN SAM, and that instructed her to appear in Criminal Court on October 5, 2004 to answer the charge of disorderly conduct.  When she arrived at the Criminal Court on that date she received a letter from the Office of the District Attorney informing her that on September 2, 2004, which had been the date of her release from police custody, their office had declined to prosecute her.  Plaintiff BETTY BASTIDAS was released after approximately 40 hours in custody.

72.     Plaintiff GREGG ROSS was told that he was going to be taken to see a Judge. Instead he was simply brought to a door and released, and informed that there would not be any charges issued against him.  He later received a summons in the mail, directing him to report to the Criminal Court on a date that had already passed.  When GREGG ROSS telephoned to inquire about this he was informed that a bench warrant had been issued for his arrest because he had not come to Court.  Defendant RUFLE was the deponent on the complaint filed with the Criminal Court against GREGG ROSS, charging him disorderly conduct and parading without a permit.  All charges against GREGG ROSS have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.  GREGG ROSS was released after approximately 50 hours in custody.

73.     Plaintiff LAUREN CASPAR was released after approximately 35 hours in custody.  On information and belief, she was charged with disorderly conduct and parading

15

without a permit.  All charges against LAUREN CASPAR have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

74.    Plaintiff JEREL WALDEN was released after approximately 44 hours in custody. Defendant DIMAGGIO was the deponent on the complaint filed against him in Criminal Court charging him with disorderly conduct and parading without a permit.  All charges against JEREL WALDEN have been dismissed in their entirety.

75.    Prior to, during, and after the RNC officials of the CITY OF NEW YORK evinced through their statements and actions an attitude of contempt toward those who demonstrated during the RNC, and toward those thought to be assisting or otherwise related to them, including legal observers, anarchists, certain segments of the press, and the National Lawyers Guild.  Officials of the CITY OF NEW YORK attempted to create a climate of fear relative to the activities of demonstrators.

76.    Defendant COHEN prior to the RNC caused the NYPD to be engaged in widespread surveillance of individuals and groups expected to be demonstrating during the RNC period, and fostered and created a climate of hostility toward demonstrators, improperly conflating them with civil disobedience and/or violence and/or violent anarchism and/or terrorism.  The intelligence obtained through Defendant COHEN's RNC intelligence program formed the backdrop and basis for the unconstitutional and illegal treatment of RNC arrestees, including the decision to engage in wrongful mass arrests, to fingerprint all arrestees, to not issue summonses to any RNC arrestees, and to hold RNC arrestees in NYPD custody for an improperly long period of time.

77.    This  tone of hostility to demonstrators, and the resultant policies, customs, practices and usages-to punish and discourage dissent were further set by statements made by other high level

16

City Officials, including the Mayor and Police Commissioner, in the period leading up to and during the RNC. These statements portrayed those who chose to engage in political protest in the most negative light. This criminalization and/or demonization of people engaged in political protest was clearly communicated to NYPD police officers and supervisors through the public statements by NYPD officials, including Police Commissioner Kelly, who made remarks about the threat posed to New York City by "hard-core" and "dangerous" protestors. This sentiment was reiterated, summarized and ratified in the public statements of defendant BLOOMBERG in which he identified the plaintiffs and those similarly situated as "terrorists" and "guilty" criminals.

78.  Defendants BLOOMBERG and KELLY further displayed their animosity to demonstrators, and their contempt for the rights of demonstrators, during the RNC period by discriminatorily and under false pretenses denying the issuance of a permit for use of Central Park's Great Lawn by demonstrators for a rally at the end of the largest planned demonstration of the RNC period on August 29, 2004.

79.  The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating. Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57. These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

80.  The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, and applied the parading ordinance and other laws, including the statute prohibiting disorderly conduct, in a

17

discriminatory and unequal fashion.

81.     The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association.  The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees in part to prevent the arrestees from exercising their rights to free speech and expression.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

82.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

83.     By their conduct and actions in harassing, falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiffs, by subjecting plaintiffs to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, by deliberate indifference to medical needs, and by violating the arrestees' Fourteenth Amendment rights to equal protection and substantive and procedural due process, defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, ESSIG, GALATI, DIECKMANN, JOHNSON, CORTRIGHT, KEEGAN, SAM, RUFLE, BAITY, DIMAGGIO and JOHN DOES, acting under color of law and without lawful justification,

18

intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the

natural and probable consequences of their acts, caused injury and damage in violation of

plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States

Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

84.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

## SECOND CLAIM

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE

## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

85.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

86.    By failing to remedy the wrongs committed by their subordinates, and in failing to

properly train, screen, supervise, or discipline their subordinates, supervisory officers

BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET,

MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO,

GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, ESSIG, GALATI,

DIECKMANN, JOHNSON, CORTRIGHT, KEEGAN, and RICHARD ROES caused damage

and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. §1983, and the United

States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

87.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

### THIRD CLAIM

### LIABILITY OF THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

88.     The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

89.     At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants had policies,

practices, customs and usages which were a direct and proximate cause of the unconstitutional

conduct alleged herein.

90.     At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had policies,

practices, customs, and usages of failing to properly train, screen, supervise, or discipline

employees and police officers, and of failing to inform the individual defendants' supervisors of

their need to train, screen, supervise or discipline said defendants.  These policies, practices,

customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged

herein.

91.     At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had policies,

practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or

retaliation for individuals' exercise of free expression and assembly.  The CITY OF NEW

YORK during the period of the RNC had policies, practices, customs, and usages of punishing

and suppressing peaceful expression and association. The CITY OF NEW YORK during the

20

period of the RNC had policies, practices, customs, and usages of using the mechanisms and

conditions of arrest and pre-arraignment detention for punitive and deterrent purposes.  The

CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and

usages of maliciously prosecuting those arrested in connection with the RNC.  The CITY OF

NEW YORK during the period of the RNC had policies, practices, customs, and usages of

preventive detention.  These policies, practices, customs, and usages were a direct and proximate

cause of the unconstitutional conduct alleged herein.

92.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had policies,

practices, customs, and usages of keeping the traffic flow moving smoothly for the benefit of the

Republican Party at all costs, including the use of mass arrests and preventive detention, and of

ensuring that the Republican Delegates to the Republican National Convention were able to

move among and between their hotels, Madison Square Garden, and other RNC venues without

any risk of impediment.  These policies, practices, customs, and usages were a direct and

proximate cause of the unconstitutional conduct alleged herein.

93.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had policies,

practices, customs, and usages of making false arrests at the slightest subjective perception of

uncooperativeness by civilians or that the police were not in, or may soon not be in, full control

of a situation, whether or not their perceived lack of control or a perceived lack of

cooperativeness in fact did not indicate the violation of any law.  These policies, practices,

customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged

herein.

21

94.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of not issuing summonses to RNC arrestees, and of not issuing Desk Appearance Tickets to RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

95.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of fingerprinting of all RNC arrestees and of not ensuring that those fingerprints and other personal information were either destroyed or returned upon dismissal of charges against RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

96.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at criminal trials.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

97.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of inflicting pain and suffering upon persons, including, keeping arrestees in handcuffs / flexcuffs for extended periods of time, applying extremely tight handcuffs / flexcuffs, denying adequate facilities to sit or sleep, exposure to irritants, exposure to extremes of heat and cold, shuttling arrestees unnecessarily among and between numerous

22

holding cages and cells, and other means of inflicting pain and discomfort. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

98.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in degrading verbal abuse utterly intolerable in a civilized society towards RNC arrestees, often while physical compulsion and/or force was being applied to RNC arrestees via tight handcuffs / flexcuffs or otherwise. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

99.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of promoting those members of the NYPD who participated in the NYPD's unconstitutional and illegal policies during the RNC. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

100.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and unequally applying the parading ordinance and other laws, including the statute prohibiting disorderly conduct. Examples of these unconstitutional, discriminatory and unequal policies, practices, customs, and usages are:

23

(a) the enforcement of the unconstitutional parading statute, New York City Administrative Code

section 10.110, Parading Without a Permit; (b) the application of the Parading Without a Permit

statute to people walking on the sidewalk; (c) enforcement of the unconstitutional Disorderly

Conduct statute, Penal Law section 240.20(5) (obstructing pedestrian traffic); (d) the application

of the Disorderly Conduct statute, subsection 5, to people walking on the sidewalk; (e)

enforcement of the Disorderly Conduct statute, Penal Law section 240.20(6) (failure to obey a

lawful order to disperse) without cause to believe that an arrestee was congregated with others

and/or without having issued any dispersal orders and/or failing to ensure that the dispersal

orders were heard and/or or without giving a sufficient opportunity for people to disperse. These

policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional

conduct alleged herein.

101.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

### FOURTH CLAIM

### LIABILITY OF HUDSON RIVER PARK TRUST
### FOR CONSTITUTIONAL VIOLATIONS

102.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

103.    At all times material to this complaint, defendant HUDSON RIVER PARK

TRUST had de facto policies, practices, customs and usages which were a direct and proximate

cause of the unconstitutional conduct alleged herein.

104.    At all times material to this complaint, defendant HUDSON RIVER PARK

TRUST, had <u>de</u> <u>facto</u> policies, practices, customs, and usages of deliberate indifference to the health and well being of those who they knew or should have known would be held in Pier 57.

105.    By their conduct and actions in contracting with the CITY OF NEW YORK and otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of the RNC, and thereby subjecting plaintiffs to hazardous conditions of confinement, officials of the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth amendment.

106.    These acts, policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

107.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON RIVER PARK TRUST FOR STATE LAW VIOLATIONS

108.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

109.    The conduct of defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA,

25

MONAHAN, COLGAN, ESSIG, GALATI, DIECKMANN, JOHNSON, CORTRIGHT, KEEGAN, SAM, RUFLE, BAITY, DIMAGGIO, DOES, and ROES alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers, and/or while they were acting as agents and employees of defendant THE CITY OF NEW YORK, and, as a result, defendant THE CITY OF NEW YORK is liable to the plaintiffs pursuant to the state common law doctrine of respondeat superior.

110.    The conduct of employees and officials of the HUDSON RIVER PARK TRUST, alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK concerning the improper and dangerous use of Pier 57, occurred in and during the course and scope of their duties and functions as employees and officials of the HUDSON RIVER PARK TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

111.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

### ASSAULT AND BATTERY

112.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

113.    By the actions described above, defendants did inflict assault and battery upon plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the

26

laws and Constitution of the State of New York.

114.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTH CLAIM

### FALSE ARREST and FALSE IMPRISONMENT

115.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

116.    By the actions described above, defendants caused to be falsely arrested or falsely arrested plaintiffs, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

117.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## EIGHTH CLAIM

### INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

118.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

119.    By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiffs. The acts and conduct of the defendants were the direct and proximate cause of injury and

27

damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

120.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

## ABUSE OF PROCESS

121.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

122.    By the conduct and actions described above, defendants employed regularly issued process against plaintiffs compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm plaintiffs without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiffs which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

123.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TENTH CLAIM

## VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO

## FREE SPEECH AND ASSEMBLY

124.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

125.    By the actions described above, defendants violated the free speech and assembly rights of plaintiffs and retaliated against plaintiffs for the exercise of their rights to free speech and assembly.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

126.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

### ELEVENTH CLAIM

### VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

127.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

128.    By the actions described above, defendants violated the right of plaintiffs to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

129.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

### TWELFTH CLAIM

### NEGLIGENCE

29

130.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

131.    The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

132.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRTEENTH CLAIM

## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

133.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

134.    Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST negligently hired, screened, retained, supervised and trained the employees and officials who injured plaintiffs.  The acts and conduct of these employees and officials were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

135.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTEENTH CLAIM

## FUTURE MEDICAL EXPENSES

136.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

137.    During their detention at Pier 57, plaintiffs were exposed to hazardous materials. As a result of this exposure, plaintiffs reasonably anticipate consequential damages in the form of future expenses for medical monitoring and testing.

138.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTEENTH CLAIM

## PRIMA FACIE TORT

140.    The plaintiffs incorporate by reference the allegations set forth in the paragraphs above, as if fully set forth herein.

141.    Defendants, without excuse or justification, and intending to inflict harm upon plaintiffs by an act or series of acts that would otherwise be lawful, did inflict harm upon plaintiffs, to wit, the confinement and processing of plaintiffs through the stages of pre-arraignment detention in a hazardous and dilatory fashion.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

142.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTEENTH CLAIM

31

## MALICIOUS PROSECUTION

143.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

144.    By the actions described above, defendants maliciously prosecuted plaintiffs BETTY BASTIDAS and JEREL WALDEN without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs BETTY BASTIDAS and JEREL WALDEN and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

145.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTEENTH CLAIM

### VIOLATION OF NEW YORK STATE CRIMINAL PROCEDURE LAW

### §§ 160.10 AND 160.50

146.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

147.    By the actions described above, defendants violated plaintiffs' rights under New York State Criminal Procedure Law §§ 160.10 and 160.50 by fingerprinting them without any right or authority to do so, and failing to request or ensure that the fingerprints and other personal information were destroyed or returned upon dismissal of the criminal charges against plaintiffs. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

32

148.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, the plaintiffs demand the following relief jointly and severally against all of the defendants:

a. Compensatory damages;

b. Punitive damages;

c. The convening and empanelling of a jury to consider the merits of the claims herein;

d. Costs and interest and attorney's fees;

e. Such other and further relief as this court may deem appropriate and equitable.

Dated:    New York, New York
          August 31__, 2007

                              _____/S/_____
                              JEFFREY A. ROTHMAN, ESQ.
                              (JR-0398)
                              315 Broadway, Suite 200
                              New York, NY 10007
                              (212) 227-2980

                              JOHN WARE UPTON, ESQ.
                              (JU-9065)
                              70 Lafayette Street
                              New York, NY 10013
                              (212) 233-9300

                              Attorneys for plaintiffs