Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

RANDY XU, DELMAR CONKLIN, DAVID   )
BECKER, SARA HEIFETZ, CHARITY JAMES, )
and HANNAH JANEWAY,   )

   )   **SECOND AMENDED**
   )   **COMPLAINT**

     Plaintiffs,   )
   )   **ECF CASE**
   -against-   )   **05 Civ. 7672 (KMK)(JCF)**

   )

THE CITY OF NEW YORK; MICHAEL   )
BLOOMBERG, Mayor of the City of New York; )   **JURY TRIAL DEMANDED**
RAYMOND KELLY, New York City Police   )
Commissioner; STEPHEN HAMMERMAN,   )
Former Deputy Commissioner for Legal Matters, )
New York City Police Department; DAVID   )
COHEN, Deputy Commissioner for Intelligence, )
New York City Police Department; THOMAS   )
DOEPFNER, Assistant Deputy Commissioner for )
Legal Matters, New York City Police Department; )
NYPD LIEUTENANT DANIEL ALBANO; NYPD )
DEPUTY INSPECTOR KERRY SWEET, NYPD )
Legal Bureau Executive Officer; NYPD Legal   )
Bureau Senior Counsel RUBY MARIN-JORDAN )
NYPD LEGAL BUREAU SUPERVISOR(S) AT   )
PIER 57; JOSEPH ESPOSITO, Chief of the New )
York Police Department; THOMAS GRAHAM,   )
Commander, Disorder Control Unit, New York City )
Police Department; JACK MCMANUS, Assistant )
Chief, New York City Police Department; BRUCE )
SMOLKA, former Commander, Patrol Borough   )
Manhattan South, New York City Police   )
Department; TERENCE MONAHAN, Assistant   )
Chief of the Bronx Borough Command; JOHN J. )
COLGAN, Assistant Chief, New York City Police )
Department; NYPD INSPECTOR KEVIN WARD; )
NYPD INSPECTOR THOMAS DIRUSSO; NYPD )
LIEUTENANT BERGQUIST; NYPD SERGEANT )
WILLIAM MURPHY; POLICE OFFICER   )
RUSSELL JOHN, Shield No. 31399; POLICE   )
OFFICER BIENVENI MENA, Shield No. 7584; )

1

**Deleted:** LASHLEY CARNEY,

**Deleted:** POLICE OFFICER FRE

POLICE OFFICER RAYMOND GONZALEZ,    )
Shield No. 10688; POLICE OFFICER STEPHEN    )
NELSON, Shield No. 27285; POLICE OFFICER    )
JOSELITO CHAPARRO, Shield No.03429; JOHN    )
DOES;RICHARD ROES; HUDSON RIVER PARK)
TRUST,                                                                                )
                                                                                            )
                                                Defendants.    )
----------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiffs seek relief for the defendants'

violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the

United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments,

and by the laws and Constitution of the State of New York.  The plaintiffs seek damages, both

compensatory and punitive, an award of costs and attorneys' fees, and such other and further

relief as this court deems equitable and just.

## JURISDICTION

2.    This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

Jurisdiction is conferred upon this court by 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being

an action seeking redress for the violation of the plaintiffs' constitutional and civil rights.

3.    The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28

U.S.C. §1367, over any and all state law claims and as against all parties that are so related to

claims in this action within the original jurisdiction of this court that they form part of the same

case or controversy.

## JURY TRIAL DEMANDED

2

4.      Plaintiffs demand a trial by jury on each and every one of their claims as pleaded

herein.

## VENUE

5.      Venue is proper for the United States District Court for the Southern District of

New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.      Plaintiffs LASHLEY CARNEY, RANDY XU, DAVID BECKER, SARA

HEIFETZ, CHARITY JAMES, and HANNAH JANEWAY filed timely Notices of Claim with

the Comptroller of the City, within 90 days of the incidents complained of herein.  More than 30

days have elapsed since the filing of these Notices of Claim, and adjustment or payment thereof

has been neglected or refused.

3

7.    Plaintiff DELMAR CONKLIN's application to file a late Notice of Claim was granted by New York State Supreme Court Justice Alice Schlesinger (New York County) on August 17, 2005 (Index No. 05/110624).

## PARTIES

8.    Plaintiff RANDY XU is a citizen of the United States, and at all times relevant herein resided in the state of New York.

| Deleted: 8.  Plaintiff LASHLEY CARNEY is a citizen of the United States, and at all times relevant herein resided in the state of New York.¶ |

9.    Plaintiff DELMAR CONKLIN is a citizen of the United States, and at all times relevant herein resided in the state of Florida.

10.    Plaintiff DAVID BECKER is a citizen of the United States, and at all times relevant herein resided in the state of New York.

11.    Plaintiff SARA HEIFETZ is a citizen of the United States, and at all times relevant herein resided in the state of New York.

12.    Plaintiff CHARITY JAMES is a citizen of the United States, and at all times relevant herein resided in the state of New York.

13.    Plaintiff HANNAH JANEWAY is a citizen of the United States, and at all times relevant herein resided in the state of Washington.

14.    Defendant THE CITY OF NEW YORK ("The City") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York

4

City Police Department ("NYPD").

15.     Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued in both his individual and official capacities.

16.     Defendant RAYMOND KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

17.     STEPHEN HAMMERMAN, is and was at all times relevant herein, the Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

18.     DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

19.     THOMAS DOEPFNER, is and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

5

20.     NYPD LIEUTENANT DANIEL ALBANO, is and was at all times relevant herein a Lieutenant in the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

21.     NYPD DEPUTY INSPECTOR KERRY SWEET,  is and was at all times relevant herein a Deputy Inspector in and the Executive Officer of  the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

22.     RUBY MARIN-JORDAN is and was at all times relevant herein a Senior Counsel within the Legal Bureau for the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  She is sued individually and in his official capacity.

23     NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 are and were at all times relevant herein members of the Legal Bureau for the New York City Police Department, and are responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  They are sued individually and in his official capacity.

24.     Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He was also a street

6

commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity.

25.     Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

26.     Defendant JACK MCMANUS, is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party and for general oversight of the NYPD operations during the Republican National Convention (RNC) period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

27.     Defendant BRUCE SMOLKA is a retired Assistant Chief of the NYPD and the former Chief of Patrol Borough Manhattan South and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.   He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity. He is sued individually and in his official capacity.

28.     Defendant TERENCE MONAHAN is an Assistant Chief in the NYPD and the Chief of the Bronx Borough Command who during the RNC period was responsible for the NYPD's Mobile Field Forces, which made the great majority of the unlawful arrests during the RNC period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.   He was also a street commander who

7

commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity.

29.    Defendant JOHN J. COLGAN, is an Assistant Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

30.     Defendants WARD, DIRUSSO, BERGQUIST, MURPHY, JOHN, MENA,

GONZALEZ, NELSON, CHAPARRO, and JOHN DOES, are and were at all times relevant

herein duly appointed and acting officers, servants, employees and agents of THE CITY OF

NEW YORK and/or the New York City Police Department, a municipal agency of defendant

THE CITY OF NEW YORK.  Said individual defendants are and were at all times relevant

herein acting under color of state law in the course and scope of their duties and functions as

officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting

for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW

YORK and the New York City Police Department, and were otherwise performing and engaging

in conduct incidental to the performance of their lawful functions in the course of their duties.

Defendants WARD, DIRUSSO, BERGQUIST, MURPHY, JOHN, MENA, GONZALEZ,

NELSON, CHAPARRO, and JOHN DOES are sued individually and in their official capacity.

31.     Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER,

ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA,

MONAHAN, COLGAN, WARD, DIRUSSO. BERGQUIST, MURPHY, and RICHARD ROES

are and were at all times relevant herein duly appointed and acting supervisory officers, servants,

employees and agents of THE CITY OF NEW YORK and/or the New York City Police

Department, responsible for the training, retention, supervision, discipline and control of police

officers under their command.  Said individual defendants are and were at all times relevant

herein acting under color of state law in the course and scope of their duties and functions as

supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK,

were acting for, and on behalf of, and with the power and authority vested in them by THE CITY

Deleted: FREYRE,

Deleted: FREYRE,

9

OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, WARD, DIRUSSO. BERGQUIST, MURPHY, and RICHARD ROES are sued individually and in their official capacity.

32.    Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at all times relevant herein a public benefit corporation, organized and existing pursuant to the laws of the State of New York.  Defendant HUDSON RIVER PARK TRUST assumes the risks incidental to the maintenance and use of its structures and the employment of its employees as said risk attaches to the public consumers of the services provided by the HUDSON RIVER PARK TRUST and those who enter and remain within its structures.  Officials of HUDSON RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National Convention (RNC) in late August and early September of 2004.  Said officials are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officials of defendant HUDSON RIVER PARK TRUST, were acting for, and on behalf of, and with the power and authority vested in them by HUDSON RIVER PARK TRUST and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

## STATEMENT OF FACTS

33.    Plaintiffs are individuals who were arrested on 17th Street between 5th Avenue and

10

Union Square West on August 31, 2004.

34.     Plaintiffs were arrested during one of the many mass-arrests conducted by the NYPD during the period of the RNC, arrests made by the NYPD without probable cause or individualized suspicion of criminal activity.

35.     On the evening of August 31, 2004 a group of people, including plaintiffs, left Union Square Park heading North.  They were walking in an orderly fashion, and were walking on the sidewalk.  Some of the members of the group wanted to walk to the "official protest zone" near Madison Square Garden.

36.     The group was unable to continue North once they arrived at 17th Street, since that direction was blocked by police officers.

37.     The group was diverted to the West, and walked in that direction, toward 5th Avenue.

38.     The police erected barricades to prevent egress from the block at 5th Avenue. When some of the people who had been walking with the group spoke to the police officers present there, the officers told them that the group should wait while the police determined whether or not they would facilitate the group as they continued walking toward Madison Square Garden.

39.     Defendant DIRUSSO at one point told the group of people, in sum and substance, to "hold on" and he would tell them where to go.

40.     The group remained at that location for some time, and waited.

41.     The individuals were then told by the police to form a line in the roadway of 17th Street.

**Deleted:** 25.  At some point thereafter egress from the other side of the block, at Union Square West, was similarly prevented by the police, effectively trapping all those present on the block.¶

**Deleted:** The police then ordered them to get against the wall.

11

42.     The people complied with that police directive, and many of the people raised the peace sign in the air with their fingers.  Some of the people were singing Kumbaya.

43.     A short time later the people were ordered to get against the wall on the southern sidewalk of the block.

44.     The people complied with that directive as well.

45.     They were at that point surrounded by the police, who handcuffed them over a period of time and assigned them to certain police officers for purposes of processing and paperwork.

46.     People who tried to walk away and leave the area were not permitted to do so by the police.

47.     At some point prior to the mass arrests, 17th Street at Broadway was also blocked off by the NYPD.

48.     The arrest decision was made by Defendants DIRUSSO and WARD, without justification or probable cause, and without individualized knowledge that any of the arrestees had engaged in any illegal conduct.  This decision to engage in the mass arrests on 17th Street was communicated to lower-ranking NYPD officers, who effected those orders.

49.     Defendants BERGQUIST, MURPHY, and RICHARD ROES were among the NYPD Commanding Officers who also exercised command responsibility on 17th Street, and participated both directly and in their capacity as supervisors in making the wrongful mass arrests, including by assisting with the handcuffing process and the assignment of arrestees to their assigned arresting officers.  They were remiss in their supervisory duties, including failing to ensure that assigned arresting officers under their command had individualized knowledge

12

that any of their assigned arrestees had engaged in any illegal conduct, and failing to ensure that their subordinate officers did not fill out false paperwork and swear out false affidavits attesting to facts of which they were not truly aware.

50.    At no time were the individuals on 17th Street given an order to disperse or advised that they were in violation of any law or ordinance of the State or City of New York.

51.    On information and belief, the police handcuffed all those present at that location, and a period of time thereafter transported them to Pier 57.

52.    Plaintiffs were arrested at that location and brought to Pier 57. These arrests were made without probable cause or individualized suspicion of criminal activity, and were thoroughly unreasonable.

53.    Defendant JOHN was assigned as the arresting officer of plaintiff RANDY XU, and was the deponent on the Criminal Complaint filed against him.

54.    Defendant JOHN was also the arresting officer of plaintiff HANNAH JANEWAY.

55.    Defendant MENA was assigned as the arresting officer of plaintiff DELMAR CONKLIN, and was the deponent on the Criminal Complaint filed against him.

56.    Defendant GONZALEZ was assigned as the arresting officer of plaintiff DAVID BECKER, and was the deponent on the Criminal Complaint filed against him.

57.    Defendant NELSON was assigned as the arresting officer of plaintiff SARA HEIFETZ, and was the deponent on the Criminal Complaint filed against her.

58.    Defendant CHAPARRO was assigned as the arresting officer of plaintiff CHARITY JAMES, and was the deponent on the Criminal Complaint filed against her.

13

**Deleted:** 29. On information and belief, defendant FREYRE was assigned as the arresting officer of plaintiff LASHLEY CARNEY. On information and belief LASHLEY CARNEY was handcuffed on 17th Street by a JOHN DOE defendant who was of the rank of Lieutenant or higher.¶

**Deleted:** On information and belief, d

**Deleted:** On information and belief, d

**Deleted:** On information and belief, d

**Deleted:** 36.  Upon information and belief, an order or orders was/were given by higher-ranking NYPD JOHN DOE defendants present at or near the scene of plaintiffs' arrests for the lower-ranking NYPD officers to engage in the mass arrests on 17th Street.

59.    On information and belief, all those arrested on 17th Street, and the vast majority of the almost two thousand people arrested during the course of the period of the RNC, were confined for some period of time at Pier 57.

60.    Pier 57 is a former bus depot located on the Hudson River, and was reconfigured for use as a detention facility during the period of the RNC by defendant CITY OF NEW YORK.

61.    Pier 57 is owned by and/or under the control of defendant HRPT.

**Deleted:** by

62.    Prior to the RNC the CITY OF NEW YORK contracted with HRPT for the use of Pier 57 as a detention facility.

63.    The conditions at Pier 57 were atrocious.  The detainees were kept in chain-link cages topped with barbed wire that lacked adequate seating.  The floor of Pier 57 was caked with a dark grimy substance that spread to the clothing and bodies of those detained therein.  There were numerous signs warning of hazardous materials that were posted at multiple locations throughout the pier.  On information and belief, the detainees were exposed during their time at Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should have known, were present there.  During these periods of confinement the detainees were unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

64.    Plaintiffs were processed at Pier 57, and their arresting officers were instructed by employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN, DOEPFNER, SWEET, ALBANO MARIN-JORDAN, and NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 to create false accounts of plaintiffs' arrests.  On information and

14

belief, these Legal Bureau personnel also participated in the making of unconstitutional and illegal arrests at numerous mass arrest locations during the RNC.

65.    Defendant HAMMERMAN was appointed by Defendant Kelly as Deputy Commissioner of Legal Matters without having knowledge at all of the rights of demonstrators or of individuals' rights under the First Amendment more generally, and no knowledge of the elements of the charges that are most commonly lodged against arrestees in demonstration-related circumstances.  In addition to delegating his authority to Defendant DOEPFNER during the RNC period, which resulted in the construction of the NYPD Legal Bureau's unconstitutional and illegal policies, practices, customs, and usages during the RNC period, Defendant HAMMERMAN also personally set a tone of lawlessness and contempt for individual rights within the NYPD during the RNC, including by personally attempting to frame an individual named Dennis Kyne for crimes which he did not commit.

66.    The detainees at Pier 57, including plaintiffs, were further subjected to unreasonable delay in being processed and moved through the system.  The City insisted on fingerprinting all RNC detainees in contravention of New York State Law, the vast number of whom were arrested and charged based only on the alleged commission of violations that did not rise to the level of crimes under New York State law, and who therefore under New York State law did not have to be fingerprinted to be processed and released with a date to return for court.  Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 not equipped with any fingerprinting machines.  On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints and other personal information were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and

15

interests of the arrestees and creating the potential for unlawful surveillance activity by law

enforcement authorities, for the unlawful chilling of their exercise of free speech and association,

and for disruptions to their lives.  Additionally, unnecessary and dilatory additional processing

steps were taken at Pier 57 that delayed the detainees' movement through the system, including

overly exacting property itemization procedures and the screening of each arrestee's paperwork

by the NYPD's Legal Division to determine and finalize what suggested charges should be

forwarded to the District Attorney's office for each arrestee, and to create the arrest narratives on

the arresting officers' paperwork.  Further unreasonable and unnecessary delays were also

suffered by RNC detainees upon their subsequent transfer to and detention at the Central

Booking Facility at 100 Centre Street.  All arrestees during the RNC were thereby held in

custody of the CITY OF NEW YORK for periods of time longer than were reasonable or

necessary.

      67.    After their detention at Pier 57, further callous and unreasonable treatment and

conditions of confinement were endured by plaintiffs during their transfer to and confinement at

the Central Booking Facility at 100 Centre Street.

      68.    On information and belief, during the periods of their confinement the vast

majority of RNC arrestees were subjected to unreasonably tight and painful wrist

restraints/handcuffs.

      69.    During their time in custody plaintiffs were subjected to unreasonably tight and

painful wrist restraints/handcuffs.

      70.    Plaintiff RANDY XU was released after approximately 48 hours in custody.  On

information and belief, he was charged with disorderly conduct and parading without a permit.

Deleted:  and

Deleted: a

Deleted:  46.  Plaintiff LASHLEY CARNEY was released after approximately 49 hours in custody.  On information and belief, she was charged with disorderly conduct and parading without a permit.  All charges against LASHLEY CARNEY have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.¶

All charges against RANDY XU have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

71.     Plaintiff DELMAR CONKLIN was released after approximately 46 hours in custody.  On information and belief, he was charged with disorderly conduct and parading without a permit.  All charges against DELMAR CONKLIN have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

72.     Plaintiff DAVID BECKER was released after approximately 36 hours in custody. On information and belief, he was charged with disorderly conduct and parading without a permit.  All charges against DAVID BECKER have been dismissed in their entirety.

73.     Plaintiff SARA HEIFETZ was released after more than 40 hours in custody. On information and belief, she was charged with disorderly conduct and parading without a permit. All charges against SARA HEIFETZ have been dismissed in their entirety.

74.     Plaintiff CHARITY JAMES was released after more than 40 hours in custody. On information and belief, she was charged with disorderly conduct and parading without a permit. All charges against CHARITY JAMES have been dismissed in their entirety.

75.     Plaintiff HANNAH JANEWAY was released after approximately 47 hours in custody. On information and belief, she was charged with disorderly conduct and parading without a permit.  All charges against HANNAH JANEWAY have been dismissed in their entirety.

76.     Prior to, during, and after the RNC officials of the CITY OF NEW YORK evinced through their statements and actions an attitude of contempt toward those who demonstrated during the RNC, and toward those thought to be assisting or otherwise related to

17

them, including legal observers, anarchists, certain segments of the press, and the National

Lawyers Guild.  Officials of the CITY OF NEW YORK attempted to create a climate of fear

relative to the activities of demonstrators.

77.    Defendant COHEN prior to the RNC caused the NYPD to be engaged in

widespread surveillance of individuals and groups expected to be demonstrating during the RNC

period, and fostered and created a climate of hostility toward demonstrators, improperly

conflating them with civil disobedience and/or violence and/or violent anarchism and/or

terrorism.  The intelligence obtained through Defendant COHEN's RNC intelligence program

formed the backdrop and basis for the unconstitutional and illegal treatment of RNC arrestees,

including the decision to engage in wrongful mass arrests, to fingerprint all arrestees, to not issue

summonses to any RNC arrestees, and to hold RNC arrestees in NYPD custody for an

improperly long period of time.

78.    This tone of hostility to demonstrators, and the resultant policies, customs, practices and

usages to punish and discourage dissent were further set by statements made by other high level City

Officials, including the Mayor and Police Commissioner, in the period leading up to and during the

RNC.  These statements portrayed those who chose to engage in political protest in the most negative

light.  This criminalization and/or demonization of people engaged in political protest was clearly

communicated to NYPD police officers and supervisors through the public statements by NYPD

officials, including Police Commissioner Kelly, who made remarks about the threat posed to New York

City by "hard-core" and "dangerous" protestors.  This sentiment was reiterated, summarized and ratified

in the public statements of defendant BLOOMBERG in which he identified the plaintiffs and those

similarly situated as "terrorists" and "guilty" criminals.

18

79.    Defendants BLOOMBERG and KELLY further displayed their animosity to demonstrators, and their contempt for the rights of demonstrators, during the RNC period by discriminatorily and under false pretenses denying the issuance of  a permit for use of Central Park's Great Lawn by demonstrators for a rally at the end of the largest planned demonstration of the RNC period on August 29, 2004.

80.    The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating.  Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57.  These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

81.    The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, including plaintiffs, and applied the parading ordinance and other laws, including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

82.    The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association.  The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees, including plaintiffs, in part to prevent the arrestees from exercising their rights to free speech and expression.

**FIRST CLAIM**

19

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

83.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

84.     By their conduct and actions in harassing, falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiffs, by subjecting plaintiffs to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, by deliberate indifference to medical needs, and by violating the arrestees' Fourteenth Amendment rights to equal protection and substantive and procedural due process, defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, WARD, DIRUSSO; BERGQUIST; MURPHY, JOHN, MENA, GONZALEZ, NELSON, CHAPARRO, and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

85.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

20

**Deleted:** and

**Deleted:** FREYRE,

## SECOND CLAIM

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE

## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

86.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

87.     By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory officers BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, WARD, DIRUSSO; BERGQUIST; MURPHY, and RICHARD ROES caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

88.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRD CLAIM

### LIABILITY OF THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

89.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

90.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had policies,

practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

91.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

92.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of punishing and suppressing peaceful expression and association. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of using the mechanisms and conditions of arrest and pre-arraignment detention for punitive and deterrent purposes.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of maliciously prosecuting those arrested in connection with the RNC.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of preventive detention.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

22

93.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of keeping the traffic flow moving smoothly for the benefit of the Republican Party at all costs, including the use of mass arrests and preventive detention, and of ensuring that the Republican Delegates to the Republican National Convention were able to move among and between their hotels, Madison Square Garden, and other RNC venues without any risk of impediment.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

94.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false arrests at the slightest subjective perception of uncooperativeness by civilians or that the police were not in, or may soon not be in, full control of a situation, whether or not their perceived lack of control or a perceived lack of cooperativeness in fact did not indicate the violation of any law.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

95.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of not issuing summonses to RNC arrestees, and of not issuing Desk Appearance Tickets to RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

23

96.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of fingerprinting of all RNC arrestees and of not ensuring that those fingerprints and other personal information were either destroyed or returned upon dismissal of charges against RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

97.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at criminal trials.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

98.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of inflicting pain and suffering upon persons, including, keeping arrestees in handcuffs / flexcuffs for extended periods of time, applying extremely tight handcuffs / flexcuffs, denying adequate facilities to sit or sleep, exposure to irritants, exposure to extremes of heat and cold, shuttling arrestees unnecessarily among and between numerous holding cages and cells, and other means of inflicting pain and discomfort.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

24

99.   At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in degrading verbal abuse utterly intolerable in a civilized society towards RNC arrestees, often while physical compulsion and/or force was being applied to RNC arrestees via tight handcuffs / flexcuffs or otherwise.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

100.   At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of promoting those members of the NYPD who participated in the NYPD's unconstitutional and illegal policies during the RNC.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

101.   At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and unequally applying the parading ordinance and other laws, including the statute prohibiting disorderly conduct.  Examples of these unconstitutional, discriminatory and unequal policies, practices, customs, and usages are: (a) the enforcement of the unconstitutional parading statute, New York City Administrative Code section 10.110, Parading Without a Permit; (b) the application of the Parading Without a

25

Permit statute to people walking on the sidewalk; (c) enforcement of the unconstitutional Disorderly Conduct statute, Penal Law section 240.20(5) (obstructing pedestrian traffic); (d) the application of the Disorderly Conduct statute, subsection 5, to people walking on the sidewalk; (e) enforcement of the Disorderly Conduct statute, Penal Law section 240.20(6) (failure to obey a lawful order to disperse) without cause to believe that an arrestee was congregated with others and/or without having issued any dispersal orders and/or failing to ensure that the dispersal orders were heard and/or or without giving a sufficient opportunity for people to disperse. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

102.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTH CLAIM

### LIABILITY OF HUDSON RIVER PARK TRUST
### FOR CONSTITUTIONAL VIOLATIONS

103.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

104.     At all times material to this complaint, defendant HUDSON RIVER PARK TRUST had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

105.     At all times material to this complaint, defendant HUDSON RIVER PARK TRUST, had policies, practices, customs, and usages of deliberate indifference to the health and well being of those who they knew or should have known would be held in Pier 57.

26

106.    By their conduct and actions in contracting with the CITY OF NEW YORK and otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of the RNC, and thereby subjecting plaintiffs to hazardous conditions of confinement, officials of the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth amendment.

107.    These acts, policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

108.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

**FIFTH CLAIM**

**RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON RIVER PARK TRUST FOR STATE LAW VIOLATIONS**

109.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

110.    The conduct of defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, WARD, DIRUSSO; BERGQUIST; MURPHY, JOHN, MENA, GONZALEZ, NELSON, CHAPARRO, DOES, and ROES alleged herein, occurred while they

Deleted: FREYRE,

27

were on duty and in uniform, and/or in and during the course and scope of their duties and

functions as New York City police officers, and/or while they were acting as agents and

employees of defendant THE CITY OF NEW YORK, and, as a result, defendant THE CITY OF

NEW YORK is liable to the plaintiffs pursuant to the state common law doctrine of respondeat

superior.

111.    The conduct of employees and officials of the HUDSON RIVER PARK TRUST,

alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK

concerning the improper and dangerous use of Pier 57, occurred in and during the course and

scope of their duties and functions as employees and officials of the HUDSON RIVER PARK

TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiffs

pursuant to the state common law doctrine of respondeat superior.

112.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

### ASSAULT AND BATTERY

113.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

114.    By the actions described above, defendants did inflict assault and battery upon

plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and

damage to plaintiffs and violated their statutory and common law rights as guaranteed by the

laws and Constitution of the State of New York.

28

115.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTH CLAIM

### FALSE ARREST and FALSE IMPRISONMENT

116.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

117.    By the actions described above, defendants caused to be falsely arrested, or falsely arrested, plaintiffs, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

118.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## EIGHTH CLAIM

### INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

119.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

120.    By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiffs. The acts and conduct of the defendants were the direct and proximate cause of injury and

29

damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

121.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

## ABUSE OF PROCESS

122.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

123.    By the conduct and actions described above, defendants employed regularly issued process against plaintiffs compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm plaintiffs without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiffs which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

124.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TENTH CLAIM

## VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO

30

**FREE SPEECH AND ASSEMBLY**

125.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

126.    By the actions described above, defendants violated the free speech and assembly rights of plaintiffs and retaliated against plaintiffs for the exercise of their rights to free speech and assembly.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

127.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## ELEVENTH CLAIM

**VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW**

128.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

129.    By the actions described above, defendants violated the right of plaintiffs to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

130.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

31

## TWELFTH CLAIM

### NEGLIGENCE

131.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

132.    The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

133.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRTEENTH CLAIM

### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

134.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

135.    Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST negligently hired, screened, retained, supervised and trained the employees and officials who injured plaintiffs.  The acts and conduct of these employees and officials were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

136.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

32

costs and expenses, and were otherwise damaged and injured.

## FOURTEENTH CLAIM

### FUTURE MEDICAL EXPENSES

137.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

138.    During their detention at Pier 57, plaintiffs were exposed to hazardous materials. As a result of this exposure, plaintiffs reasonably anticipate consequential damages in the form of future expenses for medical monitoring and testing.

139.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTEENTH CLAIM

### PRIMA FACIE TORT

140.    The plaintiffs incorporate by reference the allegations set forth in the paragraphs above, as if fully set forth herein.

141.    Defendants, without excuse or justification, and intending to inflict harm upon plaintiffs by an act or series of acts that would otherwise be lawful, did inflict harm upon plaintiffs, to wit, the confinement and processing of plaintiffs through the stages of pre-arraignment detention in a hazardous and dilatory fashion.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

33

142.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTEENTH CLAIM

### MALICIOUS PROSECUTION

143.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

144.    By the actions described above, defendants maliciously prosecuted plaintiffs DAVID BECKER, SARA HEIFETZ, CHARITY JAMES, and HANNAH JANEWAY without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

145.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

### SEVENTEENTH CLAIM

### VIOLATION OF NEW YORK STATE CRIMINAL PROCEDURE LAW

### §§ 160.10 AND 160.50

146.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

147.    By the actions described above, defendants violated plaintiffs' rights under New York State Criminal Procedure Law §§ 160.10 and 160.50 by fingerprinting them without any

34

right or authority to do so, and failing to request or ensure that the fingerprints and other personal information were destroyed or returned upon dismissal of the criminal charges against plaintiffs. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

148. As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, the plaintiffs demand the following relief jointly and severally against all of the defendants:

a. Compensatory damages;

b. Punitive damages;

c. The convening and empanelling of a jury to consider the merits of the claims herein;

d. Costs and interest and attorney's fees;

e. Such other and further relief as this court may deem appropriate and equitable.

35

Dated:    New York, New York
            August    , 2007

**Deleted:** November

**Deleted:** 28

**Deleted:** 5

_____

JEFFREY A. ROTHMAN, Esq.
(JR-0398)
315 Broadway, Suite 200
New York, New York 10007
(212) 227-2980

**Deleted:** 575 Madison Avenue,

**Deleted:** 1006

**Deleted:** 22

**Deleted:** 348-9833; (212) 937-8450

MARTIN R. STOLAR, ESQ.
(MS-1576)
351 Broadway
New York, NY 10013
(212) 219-1919

ALAN D. LEVINE, ESQ.
(AL-3634)
80-02 Kew Gardens Road, Ste 1010
Kew Gardens, NY 11415
(718) 793-6363

Attorneys for plaintiffs

36

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

RANDY XU, DELMAR CONKLIN, DAVID                )
BECKER, SARA HEIFETZ, CHARITY JAMES,           )
and HANNAH JANEWAY,                            )
                                               )      **SECOND AMENDED**
                                               )      **COMPLAINT**
                         Plaintiffs,           )
                                               )      **ECF CASE**
          -against-                            )      **05 Civ. 7672 (KMK)(JCF)**
                                               )
THE CITY OF NEW YORK; MICHAEL                   )
BLOOMBERG, Mayor of the City of New York;      )      **JURY TRIAL DEMANDED**
RAYMOND KELLY, New York City Police            )
Commissioner; STEPHEN HAMMERMAN,               )
Former Deputy Commissioner for Legal Matters,  )
New York City Police Department; DAVID         )
COHEN, Deputy Commissioner for Intelligence,   )
New York City Police Department; THOMAS        )
DOEPFNER, Assistant Deputy Commissioner for    )
Legal Matters, New York City Police Department; )
NYPD LIEUTENANT DANIEL ALBANO; NYPD            )
DEPUTY INSPECTOR KERRY SWEET, NYPD             )
Legal Bureau Executive Officer; NYPD Legal     )
Bureau Senior Counsel RUBY MARIN-JORDAN        )
NYPD LEGAL BUREAU SUPERVISOR(S) AT             )
PIER 57; JOSEPH  ESPOSITO, Chief of the New    )
York Police Department; THOMAS GRAHAM,         )
Commander, Disorder Control Unit, New York City)
Police Department; JACK MCMANUS, Assistant     )
Chief, New York City Police Department; BRUCE  )
SMOLKA, former Commander, Patrol Borough       )
Manhattan South, New York City Police          )
Department; TERENCE MONAHAN, Assistant         )
Chief of the Bronx Borough Command; JOHN J.    )
COLGAN, Assistant Chief, New York City Police  )
Department; NYPD INSPECTOR KEVIN WARD;         )
NYPD INSPECTOR THOMAS DIRUSSO; NYPD            )
LIEUTENANT BERGQUIST; NYPD SERGEANT            )
WILLIAM MURPHY; POLICE OFFICER                 )
RUSSELL JOHN, Shield No. 31399; POLICE         )
OFFICER BIENVENI MENA, Shield No. 7584;        )
POLICE OFFICER RAYMOND GONZALEZ,               )

1

Shield No. 10688; POLICE OFFICER STEPHEN   )
NELSON, Shield No. 27285; POLICE OFFICER   )
JOSELITO CHAPARRO, Shield No.03429**;** JOHN )
DOES; RICHARD ROES; HUDSON RIVER PARK)
TRUST,                                    )
                                          )
                       Defendants.        )
-------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which plaintiffs seek relief for the defendants'

violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the

United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments,

and by the laws and Constitution of the State of New York.  The plaintiffs seek damages, both

compensatory and punitive, an award of costs and attorneys' fees, and such other and further

relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

Jurisdiction is conferred upon this court by 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being

an action seeking redress for the violation of the plaintiffs' constitutional and civil rights.

3.      The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28

U.S.C. §1367, over any and all state law claims and as against all parties that are so related to

claims in this action within the original jurisdiction of this court that they form part of the same

case or controversy.

## JURY TRIAL DEMANDED

4.      Plaintiffs demand a trial by jury on each and every one of their claims as pleaded

2

herein.

## VENUE

5.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.      Plaintiffs LASHLEY CARNEY, RANDY XU, DAVID BECKER, SARA HEIFETZ, CHARITY JAMES, and HANNAH JANEWAY filed timely Notices of Claim with the Comptroller of the City, within 90 days of the incidents complained of herein.  More than 30 days have elapsed since the filing of these Notices of Claim, and adjustment or payment thereof has been neglected or refused.

7.      Plaintiff  DELMAR CONKLIN's application to file a late Notice of Claim was granted by New York State Supreme Court Justice Alice Schlesinger (New York County) on August 17, 2005 (Index No. 05/110624).

## PARTIES

8.      Plaintiff RANDY XU is a citizen of the United States, and at all times relevant herein resided in the state of New York.

9.      Plaintiff DELMAR CONKLIN is a citizen of the United States, and at all times relevant herein resided in the state of Florida.

10.      Plaintiff DAVID BECKER is a citizen of the United States, and at all times relevant herein resided in the state of New York.

11.      Plaintiff SARA HEIFETZ is a citizen of the United States, and at all times relevant herein resided in the state of New York.

12.      Plaintiff CHARITY JAMES is a citizen of the United States, and at all times

3

relevant herein resided in the state of New York.

13.    Plaintiff HANNAH JANEWAY is a citizen of the United States, and at all times relevant herein resided in the state of Washington.

14.    Defendant THE CITY OF NEW YORK ("The City") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department ("NYPD").

15.    Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued in both his individual and official capacities.

16.    Defendant RAYMOND KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

17.    STEPHEN HAMMERMAN, is and was at all times relevant herein, the Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

4

18.     DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

19.     THOMAS DOEPFNER, is and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

20.     NYPD LIEUTENANT DANIEL ALBANO, is and was at all times relevant herein a Lieutenant in the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

21.     NYPD DEPUTY INSPECTOR KERRY SWEET,  is and was at all times relevant herein a Deputy Inspector in and the Executive Officer of  the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

22.     RUBY MARIN-JORDAN is and was at all times relevant herein a Senior Counsel within the Legal Bureau for the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  She is sued individually and in his official capacity.

23     NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 are and were at all times

5

relevant herein members of the Legal Bureau for the New York City Police Department, and are responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  They are sued individually and in his official capacity.

24.     Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

25.     Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

26.     Defendant JACK MCMANUS, is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party and for general oversight of the NYPD operations during the Republican National Convention (RNC) period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

27.     Defendant BRUCE SMOLKA is a retired Assistant Chief of the NYPD and the former Chief of Patrol Borough Manhattan South and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.   He was also a street commander who commanded / oversaw the making of

6

unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.  He is sued individually and in his official capacity.

28.    Defendant TERENCE MONAHAN is an Assistant Chief in the NYPD and the Chief of the Bronx Borough Command who during the RNC period was responsible for the NYPD's Mobile Field Forces, which made the great majority of the unlawful arrests during the RNC period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity.

29.    Defendant JOHN J. COLGAN, is an Assistant Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

30.    Defendants WARD, DIRUSSO, BERGQUIST, MURPHY, JOHN, MENA, GONZALEZ, NELSON, CHAPARRO, and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK.  Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

7

Defendants WARD, DIRUSSO, BERGQUIST, MURPHY, JOHN, MENA, GONZALEZ, NELSON, CHAPARRO, and JOHN DOES are sued individually and in their official capacity.

31.     Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, WARD, DIRUSSO. BERGQUIST, MURPHY, and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of police officers under their command.  Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, WARD, DIRUSSO. BERGQUIST, MURPHY, and RICHARD ROES are sued individually and in their official capacity.

32.     Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at all times relevant herein a public benefit corporation, organized and existing pursuant to the laws of the State of New York.  Defendant HUDSON RIVER PARK TRUST assumes the risks incidental to the maintenance and use of its structures and the employment of its employees as said risk attaches to the public consumers of the services provided by the HUDSON RIVER

PARK TRUST and those who enter and remain within its structures.  Officials of HUDSON

RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted

THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National

Convention (RNC) in late August and early September of 2004.  Said officials are and were at all

times relevant herein acting under color of state law in the course and scope of their duties and

functions as officials of defendant HUDSON RIVER PARK TRUST, were acting for, and on

behalf of, and with the power and authority vested in them by HUDSON RIVER PARK TRUST

and were otherwise performing and engaging in conduct incidental to the performance of their

lawful functions in the course of their duties.

## STATEMENT OF FACTS

33.    Plaintiffs are individuals who were arrested on 17th Street between 5th Avenue and

Union Square West on August 31, 2004.

34.    Plaintiffs were arrested during one of the many mass-arrests conducted by the

NYPD during the period of the RNC, arrests made by the NYPD without probable cause or

individualized suspicion of criminal activity.

35.    On the evening of August 31, 2004 a group of people, including plaintiffs, left

Union Square Park heading North.  They were walking in an orderly fashion, and were walking

on the sidewalk.  Some of the members of the group wanted to walk to the "official protest zone"

near Madison Square Garden.

36.    The group was unable to continue North once they arrived at 17th Street, since that

direction was blocked by police officers.

37.    The group was diverted to the West, and walked in that direction, toward 5th

Avenue.

9

38.    The police erected barricades to prevent egress from the block at 5th Avenue. When some of the people who had been walking with the group spoke to the police officers present there, the officers told them that the group should wait while the police determined whether or not they would facilitate the group as they continued walking toward Madison Square Garden.

39.    Defendant DIRUSSO at one point told the group of people, in sum and substance, to "hold on" and he would tell them where to go.

40.    The group remained at that location for some time, and waited.

41.    The individuals were then told by the police to form a line in the roadway of 17th Street.

42.    The people complied with that police directive, and many of the people raised the peace sign in the air with their fingers.  Some of the people were singing Kumbaya.

43.    A short time later the people were ordered to get against the wall on the southern sidewalk of the block.

44.    The people complied with that directive as well.

45.    They were at that point surrounded by the police, who handcuffed them over a period of time and assigned them to certain police officers for purposes of processing and paperwork.

46.    People who tried to walk away and leave the area were not permitted to do so by the police.

47.    At some point prior to the mass arrests, 17th Street at Broadway was also blocked off by the NYPD.

48.    The arrest decision was made by Defendants DIRUSSO and WARD, without

10

justification or probable cause, and without individualized knowledge that any of the arrestees

had engaged in any illegal conduct.  This decision to engage in the mass arrests on 17th Street

was communicated to lower-ranking NYPD officers, who effected those orders.

49.    Defendants BERGQUIST, MURPHY, and RICHARD ROES were among the

NYPD Commanding Officers who also exercised command responsibility on 17th Street, and

participated both directly and in their capacity as supervisors in making the wrongful mass

arrests, including by assisting with the handcuffing process and the assignment of arrestees to

their assigned arresting officers.  They were remiss in their supervisory duties, including failing

to ensure that assigned arresting officers under their command had individualized knowledge that

any of their assigned arrestees had engaged in any illegal conduct, and failing to ensure that their

subordinate officers did not fill out false paperwork and swear out false affidavits attesting to

facts of which they were not truly aware.

50.    At no time were the individuals on 17th Street given an order to disperse or

advised that they were in violation of any law or ordinance of the State or City of New York.

51.    On information and belief, the police handcuffed all those present at that location,

and a period of time thereafter transported them to Pier 57.

52.    Plaintiffs were arrested at that location and brought to Pier 57.  These arrests were

made without probable cause or individualized suspicion of criminal activity, and were

thoroughly unreasonable.

53.    Defendant JOHN was assigned as the arresting officer of plaintiff RANDY XU,

and was the deponent on the Criminal Complaint filed against him.

54.    Defendant JOHN was also the arresting officer of plaintiff HANNAH

JANEWAY.

11

55.     Defendant MENA was assigned as the arresting officer of plaintiff DELMAR

CONKLIN, and was the deponent on the Criminal Complaint filed against him.

56.     Defendant GONZALEZ was assigned as the arresting officer of plaintiff DAVID

BECKER, and was the deponent on the Criminal Complaint filed against him.

57.     Defendant NELSON was assigned as the arresting officer of plaintiff SARA

HEIFETZ, and was the deponent on the Criminal Complaint filed against her.

58.     Defendant CHAPARRO was assigned as the arresting officer of plaintiff

CHARITY JAMES, and was the deponent on the Criminal Complaint filed against her.

59.     On information and belief, all those arrested on 17th Street, and the vast majority

of the almost two thousand people arrested during the course of the period of the RNC, were

confined for some period of time at Pier 57.

60.     Pier 57 is a former bus depot located on the Hudson River, and was reconfigured

for use as a detention facility during the period of the RNC by defendant CITY OF NEW YORK.

61.     Pier 57 is owned by and/or under the control of defendant HRPT.

62.     Prior to the RNC the CITY OF NEW YORK contracted with HRPT for the use of

Pier 57 as a detention facility.

63.     The conditions at Pier 57 were atrocious.  The detainees were kept in chain-link

cages topped with barbed wire that lacked adequate seating.  The floor of Pier 57 was caked with

a dark grimy substance that spread to the clothing and bodies of those detained therein.  There

were numerous signs warning of hazardous materials that were posted at multiple locations

throughout the pier.  On information and belief, the detainees were exposed during their time at

Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should

12

have known, were present there. During these periods of confinement the detainees were

unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

64.    Plaintiffs were processed at Pier 57, and their arresting officers were instructed by

employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN,

DOEPFNER, SWEET, ALBANO MARIN-JORDAN, and NYPD LEGAL BUREAU

SUPERVISOR(S) AT PIER 57 to create false accounts of plaintiffs' arrests. On information and

belief, these Legal Bureau personnel also participated in the making of unconstitutional and

illegal arrests at numerous mass arrest locations during the RNC.

65.    Defendant HAMMERMAN was appointed by Defendant Kelly as Deputy

Commissioner of Legal Matters without having knowledge at all of the rights of demonstrators

or of individuals' rights under the First Amendment more generally, and no knowledge of the

elements of the charges that are most commonly lodged against arrestees in demonstration-

related circumstances. In addition to delegating his authority to Defendant DOEPFNER during

the RNC period, which resulted in the construction of the NYPD Legal Bureau's unconstitutional

and illegal policies, practices, customs, and usages during the RNC period, Defendant

HAMMERMAN also personally set a tone of lawlessness and contempt for individual rights

within the NYPD during the RNC, including by personally attempting to frame an individual

named Dennis Kyne for crimes which he did not commit.

66.    The detainees at Pier 57, including plaintiffs, were further subjected to

unreasonable delay in being processed and moved through the system. The City insisted on

fingerprinting all RNC detainees in contravention of New York State Law, the vast number of

whom were arrested and charged based only on the alleged commission of violations that did not

rise to the level of crimes under New York State law, and who therefore under New York State

13

law did not have to be fingerprinted to be processed and released with a date to return for court. Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 not equipped with any fingerprinting machines. On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints and other personal information were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and interests of the arrestees and creating the potential for unlawful surveillance activity by law enforcement authorities, for the unlawful chilling of their exercise of free speech and association, and for disruptions to their lives. Additionally, unnecessary and dilatory additional processing steps were taken at Pier 57 that delayed the detainees' movement through the system, including overly exacting property itemization procedures and the screening of each arrestee's paperwork by the NYPD's Legal Division to determine and finalize what suggested charges should be forwarded to the District Attorney's office for each arrestee, and to create the arrest narratives on the arresting officers' paperwork. Further unreasonable and unnecessary delays were also suffered by RNC detainees upon their subsequent transfer to and detention at the Central Booking Facility at 100 Centre Street. All arrestees during the RNC were thereby held in custody of the CITY OF NEW YORK for periods of time longer than were reasonable or necessary.

67.     After their detention at Pier 57, further callous and unreasonable treatment and conditions of confinement were endured by plaintiffs during their transfer to and confinement at the Central Booking Facility at 100 Centre Street.

68.     On information and belief, during the periods of their confinement the vast majority of RNC arrestees were subjected to unreasonably tight and painful wrist restraints/handcuffs.

14

69.     During their time in custody plaintiffs were subjected to unreasonably tight and painful wrist restraints/handcuffs.

70.     Plaintiff RANDY XU was released after approximately 48 hours in custody.  On information and belief, he was charged with disorderly conduct and parading without a permit. All charges against RANDY XU have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

71.     Plaintiff DELMAR CONKLIN was released after approximately 46 hours in custody.  On information and belief, he was charged with disorderly conduct and parading without a permit.  All charges against DELMAR CONKLIN have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

72.     Plaintiff DAVID BECKER was released after approximately 36 hours in custody. On information and belief, he was charged with disorderly conduct and parading without a permit.  All charges against DAVID BECKER have been dismissed in their entirety.

73.     Plaintiff SARA HEIFETZ was released after more than 40 hours in custody. On information and belief, she was charged with disorderly conduct and parading without a permit. All charges against SARA HEIFETZ have been dismissed in their entirety.

74.     Plaintiff CHARITY JAMES was released after more than 40 hours in custody. On information and belief, she was charged with disorderly conduct and parading without a permit. All charges against CHARITY JAMES have been dismissed in their entirety.

75.     Plaintiff HANNAH JANEWAY was released after approximately 47 hours in custody. On information and belief, she was charged with disorderly conduct and parading without a permit.  All charges against HANNAH JANEWAY have been dismissed in their entirety.

15

76.    Prior to, during, and after the RNC officials of the CITY OF NEW YORK evinced through their statements and actions an attitude of contempt toward those who demonstrated during the RNC, and toward those thought to be assisting or otherwise related to them, including legal observers, anarchists, certain segments of the press, and the National Lawyers Guild.  Officials of the CITY OF NEW YORK attempted to create a climate of fear relative to the activities of demonstrators.

77.    Defendant COHEN prior to the RNC caused the NYPD to be engaged in widespread surveillance of individuals and groups expected to be demonstrating during the RNC period, and fostered and created a climate of hostility toward demonstrators, improperly conflating them with civil disobedience and/or violence and/or violent anarchism and/or terrorism.  The intelligence obtained through Defendant COHEN's RNC intelligence program formed the backdrop and basis for the unconstitutional and illegal treatment of RNC arrestees, including the decision to engage in wrongful mass arrests, to fingerprint all arrestees, to not issue summonses to any RNC arrestees, and to hold RNC arrestees in NYPD custody for an improperly long period of time.

78.    This  tone of hostility to demonstrators, and the resultant policies, customs, practices and usages-to punish and discourage dissent were further set by statements made by other high level City Officials, including the Mayor and Police Commissioner, in the period leading up to and during the RNC.  These statements portrayed those who chose to engage in political protest in the most negative light.  This criminalization and/or demonization of people engaged in political protest was clearly communicated to NYPD police officers and supervisors through the public statements by NYPD officials, including Police Commissioner Kelly, who made remarks about the threat posed to New York City by "hard-core" and "dangerous" protestors.   This sentiment was reiterated,

16

summarized and ratified in the public statements of defendant BLOOMBERG in which he identified the plaintiffs and those similarly situated as "terrorists" and "guilty" criminals.

79.    Defendants BLOOMBERG and KELLY further displayed their animosity to demonstrators, and their contempt for the rights of demonstrators, during the RNC period by discriminatorily and under false pretenses denying the issuance of a permit for use of Central Park's Great Lawn by demonstrators for a rally at the end of the largest planned demonstration of the RNC period on August 29, 2004.

80.    The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating.  Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57.  These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

81.    The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, including plaintiffs, and applied the parading ordinance and other laws, including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

82.    The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association.  The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees, including plaintiffs, in part to prevent the arrestees from exercising their rights to free speech and expression.

17

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

83.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

84.    By their conduct and actions in harassing, falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiffs, by subjecting plaintiffs to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, by deliberate indifference to medical needs, and by violating the arrestees' Fourteenth Amendment rights to equal protection and substantive and procedural due process, defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, WARD, DIRUSSO; BERGQUIST; MURPHY, JOHN, MENA, GONZALEZ, NELSON, CHAPARRO, and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

85.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

18

costs and expenses, and were otherwise damaged and injured.

## SECOND CLAIM

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE

## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

86.     The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

87.     By failing to remedy the wrongs committed by their subordinates, and in failing to

properly train, screen, supervise, or discipline their subordinates, supervisory officers

BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET,

MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO,

GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, WARD, DIRUSSO;

BERGQUIST; MURPHY, and RICHARD ROES caused damage and injury in violation of

plaintiffs' rights guaranteed under 42 U.S.C. §1983, and the United States Constitution,

including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

88.     As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

## THIRD CLAIM

## LIABILITY OF THE CITY OF NEW YORK
## FOR CONSTITUTIONAL VIOLATIONS

89.     The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

90.     At all times material to this complaint, defendant THE CITY OF NEW YORK,

19

acting through its police department, and through the individual defendants had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

91.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

92.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of punishing and suppressing peaceful expression and association. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of using the mechanisms and conditions of arrest and pre-arraignment detention for punitive and deterrent purposes.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of maliciously prosecuting those arrested in connection with the RNC.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of preventive detention.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

93.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of keeping the traffic flow moving smoothly for the benefit of the Republican Party at all costs, including the use of mass arrests and preventive detention, and of ensuring that the Republican Delegates to the Republican National Convention were able to move among and between their hotels, Madison Square Garden, and other RNC venues without any risk of impediment.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

94.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false arrests at the slightest subjective perception of uncooperativeness by civilians or that the police were not in, or may soon not be in, full control of a situation, whether or not their perceived lack of control or a perceived lack of cooperativeness in fact did not indicate the violation of any law.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

95.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of not issuing summonses to RNC arrestees, and of not issuing Desk Appearance Tickets to RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

96.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies,

21

practices, customs, and usages of fingerprinting of all RNC arrestees and of not ensuring that those fingerprints and other personal information were either destroyed or returned upon dismissal of charges against RNC arrestees. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

97.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at criminal trials. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

98.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of inflicting pain and suffering upon persons, including, keeping arrestees in handcuffs / flexcuffs for extended periods of time, applying extremely tight handcuffs / flexcuffs, denying adequate facilities to sit or sleep, exposure to irritants, exposure to extremes of heat and cold, shuttling arrestees unnecessarily among and between numerous holding cages and cells, and other means of inflicting pain and discomfort. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

99.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in degrading verbal abuse utterly intolerable in a civilized society towards RNC arrestees, often while physical compulsion and/or force was being

22

applied to RNC arrestees via tight handcuffs / flexcuffs or otherwise.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

100.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of promoting those members of the NYPD who participated in the NYPD's unconstitutional and illegal policies during the RNC.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

101.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and unequally applying the parading ordinance and other laws, including the statute prohibiting disorderly conduct.  Examples of these unconstitutional, discriminatory and unequal policies, practices, customs, and usages are: (a) the enforcement of the unconstitutional parading statute, New York City Administrative Code section 10.110, Parading Without a Permit; (b) the application of the Parading Without a Permit statute to people walking on the sidewalk; (c) enforcement of the unconstitutional Disorderly Conduct statute, Penal Law section 240.20(5) (obstructing pedestrian traffic); (d) the application of the Disorderly Conduct statute, subsection 5, to people walking on the sidewalk; (e) enforcement of the Disorderly Conduct statute, Penal Law section 240.20(6) (failure to obey a lawful order to disperse) without cause to believe that an arrestee was congregated with others

23

and/or without having issued any dispersal orders and/or failing to ensure that the dispersal

orders were heard and/or or without giving a sufficient opportunity for people to disperse. These

policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional

conduct alleged herein.

102.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

## FOURTH CLAIM

### LIABILITY OF HUDSON RIVER PARK TRUST
### FOR CONSTITUTIONAL VIOLATIONS

103.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

104.    At all times material to this complaint, defendant HUDSON RIVER PARK

TRUST had policies, practices, customs and usages which were a direct and proximate cause of

the unconstitutional conduct alleged herein.

105.    At all times material to this complaint, defendant HUDSON RIVER PARK

TRUST, had policies, practices, customs, and usages of deliberate indifference to the health and

well being of those who they knew or should have known would be held in Pier 57.

106.    By their conduct and actions in contracting with the CITY OF NEW YORK and

otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of

the RNC, and thereby subjecting plaintiffs to hazardous conditions of confinement, officials of

the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification,

and with a deliberate indifference to or a reckless disregard for the natural and probable

24

consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional

rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its

First, Fourth, Fifth, and Fourteenth amendment.

107.    These acts, policies, practices, customs, and usages were a direct and proximate

cause of the unconstitutional conduct alleged herein.

108.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

## FIFTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON RIVER PARK TRUST FOR STATE LAW VIOLATIONS

109.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

110.    The conduct of defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN,

DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU

SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA,

MONAHAN, COLGAN, WARD, DIRUSSO; BERGQUIST; MURPHY, JOHN, MENA,

GONZALEZ, NELSON, CHAPARRO, DOES, and ROES alleged herein, occurred while they

were on duty and in uniform, and/or in and during the course and scope of their duties and

functions as New York City police officers, and/or while they were acting as agents and

employees of defendant THE CITY OF NEW YORK, and, as a result, defendant THE CITY OF

NEW YORK is liable to the plaintiffs pursuant to the state common law doctrine of respondeat

superior.

25

111.    The conduct of employees and officials of the HUDSON RIVER PARK TRUST, alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK concerning the improper and dangerous use of Pier 57, occurred in and during the course and scope of their duties and functions as employees and officials of the HUDSON RIVER PARK TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

112.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

### ASSAULT AND BATTERY

113.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

114.    By the actions described above, defendants did inflict assault and battery upon plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

115.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTH CLAIM

### FALSE ARREST and FALSE IMPRISONMENT

116.    The plaintiffs incorporate by reference the allegations set forth in all preceding

26

paragraphs as if fully set forth herein.

117.     By the actions described above, defendants caused to be falsely arrested, or falsely arrested, plaintiffs, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

118.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## EIGHTH CLAIM

## INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

119.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

120.     By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiffs. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

121.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

## ABUSE OF PROCESS

122.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

123.    By the conduct and actions described above, defendants employed regularly issued process against plaintiffs compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm plaintiffs without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiffs which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

124.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TENTH CLAIM

## VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO FREE SPEECH AND ASSEMBLY

125.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

126.    By the actions described above, defendants violated the free speech and assembly rights of plaintiffs and retaliated against plaintiffs for the exercise of their rights to free speech and assembly.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

28

127.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## ELEVENTH CLAIM

### VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

128.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

129.    By the actions described above, defendants violated the right of plaintiffs to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

130.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TWELFTH CLAIM

### NEGLIGENCE

131.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

132.    The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

133.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRTEENTH CLAIM

## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

134.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

135.    Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST negligently hired, screened, retained, supervised and trained the employees and officials who injured plaintiffs.  The acts and conduct of these employees and officials were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

136.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTEENTH CLAIM

## FUTURE MEDICAL EXPENSES

137.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

138.    During their detention at Pier 57, plaintiffs were exposed to hazardous materials. As a result of this exposure, plaintiffs reasonably anticipate consequential damages in the form of future expenses for medical monitoring and testing.

139.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

30

costs and expenses, and were otherwise damaged and injured.

## FIFTEENTH CLAIM

## PRIMA FACIE TORT

140.    The plaintiffs incorporate by reference the allegations set forth in the paragraphs above, as if fully set forth herein.

141.    Defendants, without excuse or justification, and intending to inflict harm upon plaintiffs by an act or series of acts that would otherwise be lawful, did inflict harm upon plaintiffs, to wit, the confinement and processing of plaintiffs through the stages of pre-arraignment detention in a hazardous and dilatory fashion. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

142.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTEENTH CLAIM

## MALICIOUS PROSECUTION

143.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

144.    By the actions described above, defendants maliciously prosecuted plaintiffs DAVID BECKER, SARA HEIFETZ, CHARITY JAMES, and HANNAH JANEWAY without any right or authority to do so. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law

31

rights as guaranteed by the laws and Constitution of the State of New York.

145.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTEENTH CLAIM

### VIOLATION OF NEW YORK STATE CRIMINAL PROCEDURE LAW

### §§ 160.10 AND 160.50

146.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

147.    By the actions described above, defendants violated plaintiffs' rights under New York State Criminal Procedure Law §§ 160.10 and 160.50 by fingerprinting them without any right or authority to do so, and failing to request or ensure that the fingerprints and other personal information were destroyed or returned upon dismissal of the criminal charges against plaintiffs. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

148.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, the plaintiffs demand the following relief jointly and severally against all of the defendants:

a.  Compensatory damages;

b.  Punitive damages;

c.  The convening and empanelling of a jury to consider the merits of the claims

herein;

d.  Costs and interest and attorney's fees;

e.  Such other and further relief as this court may deem appropriate and equitable.


Dated:        New York, New York
              August __, 2007
                    31

                                        _____
                                        /S/
                                        JEFFREY A. ROTHMAN, Esq.
                                        (JR-0398)
                                        315 Broadway, Suite 200
                                        New York, New York 10007
                                        (212) 227-2980

                                        MARTIN R. STOLAR, ESQ.
                                        (MS-1576)
                                        351 Broadway
                                        New York, NY 10013
                                        (212) 219-1919

                                        ALAN D. LEVINE, ESQ.
                                        (AL-3634)
                                        80-02 Kew Gardens Road, Ste 1010
                                        Kew Gardens, NY 11415
                                        (718) 793-6363

                                        Attorneys for plaintiffs

33